## Duane Morris®

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

JOHN DELLAPORTAS
DIRECT DIAL: 212.692.1012
PERSONAL FAX: 212.202.4866
*E-MAIL:* dellajo@duanemorris.com

*www.duanemorris.com*

November 19, 2009

**VIA ECF**

The Honorable E. Thomas Boyle
United States District Court
100 Federal Plaza, P.O. Box 9014
Central Islip, New York 11722

Re:   *David S. Taub and Marc Taub v. Marchesi Di Barolo S.P.A.*,
      **Index No.: 09-CV-599 (ADS)(AKT)**

Dear Judge Boyle:

We represent defendant Marchesi di Barolo in the above referenced matter. We write in response to the renewed letter motion filed by Gary Ettelman, Esq. on behalf of plaintiffs David and Marc Taub on November 16, 2009.

Mr. Ettelman's letter is a disgrace. In it, he falsely and frivolously accuses a *pro hac vice* member of the Bar, Ms. Pontikes, of numerous ethical violations, along with perjury and tortious interference. This followed an earlier letter, struck by Your Honor, in which Mr. Ettelman made similar allegations without so much as a courtesy call to our side of the table.

As detailed in the accompanying affidavits of Jack Cacciato and Rachael G. Pontikes, annexed hereto as Exhibits A and B, the relevant facts are as follows. During the week of October 26, 2009, Mr. Cacciato, the founder and President of local wine importer Wine Wave / Vinteligence LLC ("Wine Wave") and a thirty-year industry veteran, contacted Ms. Pontikes and informed her that he had learned from various knowledgeable sources in the wine industry that the Taubs' company, Palm Bay International, was in discussions with Italian winemaker Fontanafredda to take the place of Marchesi's position in Palm Bay's portfolio. This is of critical importance to this case and the related *Palm Bay* litigation, because the Taubs and Palm Bay have repeatedly maintained in their pleadings that Marchesi's wines are irreplaceable, and that they are therefore entitled to millions of dollars in damages without mitigation.

As Mr. Cacciato makes clear in his affidavit, at no point did Ms. Pontikes advise him of the subject matter of any confidential information in any of the pending litigation. Should the Court desire, Mr. Cacciato is willing to appear before Your Honor and identify the sources of his information on an *in camera* basis.

The Honorable E. Thomas Boyle
November 19, 2009
Page 2

**Duane Morris**

  Upon receipt of this critical information, Ms. Pontikes sought to independently verify it by doing a Google search to determine if Fontanafredda was currently being imported into the United States. This Google search indicated that a company called Domaine Select was posting Fontanafredda as a wine it seemed to be importing into the U.S. To verify the information she had found on the website, she called Domaine Select, properly identified herself as counsel for Marchesi in the above captioned matter, and asked if the information Mr. Cacciato had provided to her was true. That short telephone call is the subject of this dispute.

  The foregoing actions were perfectly permitted under the parties' Confidentiality Agreement (a copy of which is annexed hereto as Exhibit C). Specifically, paragraph 8 thereof provides in relevant part that: **"This Stipulation and Order has no effect upon, and shall not apply to, … any party's use of any document or other information developed or obtained independent of discovery in this action for any purpose"** (emphasis added).

  In short, Ms. Pontikes conducted an independent, good faith investigation, as any attorney in her shoes should have done. The Second Circuit has long held that "time-honored and decision-honored principles" establish "that counsel for all parties have a right to interview an adverse party's witnesses (the witness willing) in private, without the presence or consent of opposing counsel and without a transcript being made." *Int'l Bus. Mach. Corp. v. Edelstein*, 526 F.2d 37, 42 (2d Cir. 1975). "[N]o party to litigation has anything resembling a proprietary right to any witness's evidence. Absent a privilege no party is entitled to restrict an opponent's access to a witness, however partial or important to him, by insisting upon some notion of allegiance." *Doe v. Eli Lilly & Co.*, 99 F.R.D. 126, 128 (D.D.C. 1983).

  Notwithstanding the clear propriety of what transpired, Mr. Ettelman offers up a series of highly specious and inappropriate arguments in his letter, each of which we now address. First, he suggests that Ms. Pontikes and Mr. Cacciato submitted perjured affidavits, stating that certain aspects of their account somehow "speaks volumes." If a member of the Bar is going to accuse a fellow counsel and a respected local businessman of perjury, one would hope he would at least present some evidence to back up such an incendiary allegation. In this case, however, the only thing Mr. Ettelman offers is an email from a Domaine Select employee which <u>completely supports Ms. Pontikes' account and repudiates Mr. Ettelman's</u>.

  First, the email makes clear that Ms. Pontikes properly identified herself and whom she represented. Second, the email, dated November 3, 2009, indicates that Ms. Pontikes had "just" called. This would place the call just a few days after Mr. Cacciato reported the information to Ms. Pontikes, but nowhere near the deposition of Marc Taub on September 14, 2009.[1] Third, the account of what Ms. Pontikes told him is consistent with what Mr. Cacciato had reported to her,

---

[1] Mr. Ettelman in his letter incorrectly claims that "the Taubs" both testified about Fontanafredda, but a review of David Taub's September 23, 2009 deposition transcript reveals no such testimony.

DuaneMorris

The Honorable E. Thomas Boyle
November 19, 2009
Page 3

but is inconsistent with what Marc Taub had testified to under oath: "As a part of her research she has been told that Fontanafredda would be changing importers to Palm Bay (and replacing Marchesi di Barolo) ...." That is what Mr. Cacciato had learned. Marc Taub, by contrast, only testified that Palm Bay had entered into discussions with five Italian wineries, one of which was Fontanafredda, and that no agreement was near with any of them. (Exh. D, filed under seal)

In short, Mr. Ettelman's allegations of misconduct are without merit. His allegations of "tortious interference with business opportunities of the Taubs and Palm Bay" is even more absurd. Ms. Pontikes did not speak with any of the Taubs' or Palm Bay's prospective business partners, let alone act with "the sole purpose of harming the plaintiff or us[ing] dishonest, unfair, or improper means," as New York law would require. *See Bemben v. Fuji Photo Film U.S.A.*, 2004 U.S. Dist. Lexis 8184, at **18-19 (S.D.N.Y. May 10, 2004) (quoting *Nadel v. Play-By-Play Toys & Novelties, Inc.*, 208 F.3d 368, 382 (2d Cir. 2000)) (emphasis added). Rather, she conducted a good faith and completely proper investigation on behalf of clients who are being sued by the Taubs and Palm Bay for $12 million.

At the end of the day, the renewed letter motion appears to be nothing more than a ruse to cancel, unilaterally and for the fourth straight time, the continued depositions of the Taubs that this Court directed by order dated September 30, 2009 (Dkt #33). We note that the Taubs did not appear for their Court-ordered depositions, as Your Honor had directed them to do, a matter that is now before Judge Spatt on defendants' motion for default judgment. (Exh. E.)

Raising dubious ethical concerns in order to gain a tactical advantage in a civil case is always prohibited. *See, e.g., Steinbuch v. Cutler*, 2009 Bankr. Lexis 2126, *3 (N.D.N.Y. Bankr. Jun. 5, 2009) ("The court takes very seriously [defense counsel's] suggestion that plaintiff is attempting to use a frivolous and factually inaccurate ethics complaint for the purpose of gaining an advantage in a pending civil matter. The court forewarns plaintiff that if there is any further attempted exploitation by plaintiff to misuse this proceeding and this court to inappropriately attempt to extract some advantage in other litigation or otherwise bog down this litigation, this court will appropriately deal with such behavior ....").

Accordingly, we respectfully request that the renewed letter motion be stricken from the docket and Marchesi be awarded fees and costs for having to respond to the same. We further request that, should Judge Spatt deny Marchesi's motion for a default judgment, this Court direct the Taubs to appear promptly at the offices of Duane Morris LLP to complete their quadruple-cancelled depositions. We thank the Court for its consideration.

Respectfully Submitted,

John Dellaportas

cc:   All Counsel of Record