# EXHIBIT A

## AGENCY AGREEMENT

MARCHESE DI BAROLO doing production and business in wines hereinafter called the Manufacturer ("Manufacturer") and MARTIN G. TAUB, residing at 4400 Hillcrest Drive, Hollywood, FL 33021, and DAVID S. TAUB, residing at 69 The Intervale, Roslyn Estates, New York 11576 as Individual, hereinafter called the Agents ("Agents").

Whereas, the Manufacturer is engaged in the manufacture and sales of wine under the brand name MARCHESE DI BAROLO and other products under other names to be determined hereinafter termed the Manufacturer's products ("Manufacturer's Products") and

whereas, the Agents are engaged in the business of Brokers and desire to represent the Manufacturer in the United States of America,

now, therefore, it is agreed:

1. AGENCY: The Manufacturer hereby appoints the Agents as its exclusive sales agents and representatives in the United States of America and all its territories and possessions, to sell the Manufacturer's products with brand name MARCHESE DI BAROLO and/or others to be agreed, select and appoint primary importers, distributors and wholesalers, and otherwise to act as the representative of the Manufacturer in the United States of America, Canada, Mexico and other areas to be decided, and the agents with full authority to select and appoint primary importers, distributors and wholesalers and act as sales agents and otherwise represent the interests of the Manufacturer in accordance with the terms of the Agreement.

2. DURATION: This Agreement shall have an initial duration of five (5) years, provided that all the sales made by the Agents will total each fiscal year the following minimum quantities of the Manufacturer's products:

   1993 : 5000 cases
   1994 : 5250 cases
   1995 : 5525 cases
   1996 : 5800 cases
   1997 : 6100 cases
   1998 : 6500 cases

After five (5) years, this Agreement shall be automatically renewed from year to year so long as the minimum sales made by the Agents shall be in excess of 5% based on the 5000 base year.

In the event of assignment of said agreement, it is understood that ASSIGNEE will accept as his first year sales requirement an average of the previous two (2) years sales results, which becomes the new base year.

With respect to all minimum quantities set forth in this Agreement, it is further understood and agreed that in the event the Agents shall sell in excess of the minimum quantities in any year, such excess amount can be added to the following year, but can only be applied for the purpose of the minimum quantities for the next succeeding year.

It is understood that the aforesaid minimum quantities are intended merely as the minimum quantities which only shall permit the Agents to renew this Agreement and the Agents are not required to purchase said quantities.

3. COMMENCEMENT: This agreement shall be dated the first day of January 1994, but the effective date of commencement of this Agreement shall be the date of the receipt of the first shipment in the United States of America pursuant to this Agreement. The year periods are to be based upon a twelve (12) month period from such initial date of first shipment. In the event there is a period of time when the Act of God and force majeure clause is in effect, such yearly period shall be extended for such period of time and the next annual period shall commence after the determination of the preceding period.

In the event that in any year the Agents fail to sell the minimum quantity set for such year, then the Manufacturer shall have the option to terminate this Agreement by giving to the Agents ninety (90) days written notice of termination by registered mail, provided, however, that Agents shall not have within thirty (30) days after the receipt of said notice of termination, sold a sufficient number of cases to meet the minimum provided for the preceding year.

It is understood that the written notice of termination by the Manufacturer shall contain the number of cases that would be necessary for the Agents to sell to preserve the continuation of this agreement.

4. ACT OF GOD - FORCE MAJEURE: It is understood and agreed that neither party hereto shall be held responsible for damages caused by delay of failure to perform thereunder when such delay of failure is due to fires, strikes, floods, Act of God, legal acts of the public authorities, or delay or defaults caused by public carriers which cannot reasonably be forecast or provided against.

All the time periods resulting from this Force Majeure clause shall be added to the annual period so that the year period for determination of minimum sales for such year shall be twelve (12) months plus the period of time under this "Act of God - Force Majeure" clause.

5. SALES AND PROMOTION: In performance of their duties under this Agreement, the Agents or their designees are authorized to do anything they deem advantageous for the sales of the product in the territories aforementioned.

In performance of its duties under this Agreement, the Manufacturer shall do the following:

a) the prices of the products shall be agreed everytime apart and shall be unchanged for the agreed period and quantity, provided that the products shall be collected at the agreed condition and within the agreed terms. However, it is to note that incidental special costs (taxes, charges, etc.) are appropriately supported with documents do not come into the normality and they must be replaced by the sole importers designated by the Agents. Normally and therefore without special written notice the change of the prices will be made by the Manufacturer once in a year beginning from January and the new prices shall be agreed with the Agents within November of the previous year, except the right of the Agents to complete the collection of the previously purchased cases at the previous prices, provided that the collection's term of the previous paragraph shall be respected.

The Manufacturer shall have the right, upon giving three (3) months written notice to the Agents by registered mail, to change such prices in any time. The new prices shall be agreed with the Agents within the said three (3) months, except the right of the Agent to complete the collection at the previous prices as aforementioned.

b) All goods shall be delivered ex-cellars.

c) The Manufacturer shall replace on Dollar for Dollar basis, any goods found to be defective and unusable in contradiction with the Manufacturer. The Agents shall have the right to advise and consult beforehand in regard to the quality and taste of the products purchased thereunder. The Manufacturer, with reference to the first paragraph of this point c), guarantees the quality of its products for a period of one (1) year in the case of red wine, or six months in the case of a white wine, calculated from the date of delivery, so long as in the meanwhile merchandise is handled properly.

d) The Manufacturer shall ship the products under this Agreement only to the address and following up the written instruction given by the Agents. In accordance with this, the Manufacturer commits itself not to make any shipments to any other firm within the territory, specified and/or be reshipped to said territory, unless it is so determined or authorized by the Agents.

6. TERMS OF SALE: In soliciting orders, the Agents shall quote only the prices and discounts set forth in the Manufacturer's then current pricing manual. All prices shall be F.O.B. ex-cellars and shall be payable in Italian Lire. Title shall pass to the customer on delivery of the Manufacturers product to the carrier at

The Cellars. The Manufacturer shall bill the exclusive importer who shall be appointed by the Agents. All payments of price shall be made directly to the Manufacturer by the exclusive importers on terms and conditions satisfactory to the Manufacturer, which shall be the term of 100 days from date of bill of lading.

7. COMPENSATION: The Manufacturer shall pay to the Agents, as compensation for their services performed under this Agreement, a commission of 5 percent of the selling prices ex-cellars on all of the orders obtained by the Agents for the Manufacturer's products. All compensation due hereunder shall be payable every four (4) months for merchandise that has already been paid for by Palm Bay Imports, Inc. Fifty (50%) per cent of the compensation is to be paid to M. Taub at the aforementioned address, and fifty (50%) per cent of the compensation is to be paid to David S. Taub at the aforementioned address.

8. PRIMARY IMPORTERS, WHOLESALERS AND DISTRIBUTORS: The Agents shall have the absolute authority to appoint the sale of the Manufacturer's products in the territory aforementioned. Such authority shall extend to all the terms and conditions of any agreements made between the Agents and Primary Importers, Wholesalers and Distributors including, but not limited to, wholesale selling prices and methods of marketing. In this capacity, the Agents shall not be required to obtain any consent whatsoever from the Manufacturer.

9. This Agreement is binding upon the heirs, executors and assigns of all parties. All the rights of the Agents arising under this Agreement revolve upon their respective designees without the prior written consent of the Manufacturer.

IN WITNESS WHEREOF: the parties have signed this Agreement on the day and year first above written.

_____
Martin G. Taub

_____
David S. Taub

_____
Witness

_____
Marchese Di Barolo

ERVIN G. HIGGINS
Notary Public, State of New York
No. 24-R892750
Qualified in Queens County
Commission Expires March 30, 19__