Duane Morris*

FIRM and AFFILIATE OFFICES

NEW YORK
LONDON
SINGAPORE
LOS ANGELES
CHICAGO
HOUSTON
HANOI
PHILADELPHIA
SAN DIEGO
SAN FRANCISCO
BALTIMORE
BOSTON
WASHINGTON, DC
LAS VEGAS
ATLANTA
MIAMI
PITTSBURGH
NEWARK
BOCA RATON
WILMINGTON
CHERRY HILL
PRINCETON
LAKE TAHOE
HO CHI MINH CITY

RACHAEL G. PONTIKES
DIRECT DIAL: (312) 499-6757
PERSONAL FAX: 312.277.6903
E-MAIL: rgpontikes@duanemorris.com

*www.duanemorris.com*

May 7, 2010

Magistrate Judge E. Thomas Boyle
100 Federal Plaza, Courtroom 910
Central Islip, NY  11722-9014

    **Re:**    *David S. Taub and Marc Taub v. Marchesi Di Barolo S.p.A.,*
            **Cons. Case Nos. CV 09 599 and CV 09 601 (ADS) (ETB)**

Dear Judge Boyle:

    We represent defendant Marchesi di Barolo S.p.A. ("Marchesi") in the above captioned matter.  We submit this letter in opposition to the FRCP 26(c) motion of plaintiffs David S. Taub, Marc Taub, and Palm Bay International ("Plaintiffs" or "PB") for a protective order prohibiting Marchesi from deposing Dr. Gordon Burns, the Technical Director of ETS Laboratory (DE 117).

    As set forth below, Plaintiffs created the very situation about which they now complain by obstructing Marchesi's efforts to timely conduct an inspection of the contested Moscato wines, which in turn delayed the testing of those wines. Marchesi tested the wine at ETS, the same facility where PB tested the wine in 2008; Marchesi had ETS conduct the same tests PB asked ETS to perform.  Nevertheless, PB unreasonably challenged the authentication of all tests of the Moscato wines (even the tests PB had ETS do), which forced Marchesi to seek the deposition of the person who orchestrated these tests, Dr. Burns.  Moreover, now that trial has been adjourned to mid July 2010 (DE 118), Plaintiffs' fear of a deposition on the "eve" of trial is moot.  Plaintiffs' motion should be denied.

    First, Plaintiffs mislead this Court when they claim that they made the wine available for inspection in July 2009 (DE 117, at 1).  Plaintiffs actually refused to allow Marchesi to inspect until mid December 2009.  PB only agreed to allow Marchesi to inspect the wine after Your Honor ordered PB's counsel to show cause under Section 1927 as to why sanctions should not be imposed on PB's counsel's for multiplying the proceedings unreasonably and vexatiously.  (DE 48).  Throughout early October 2009, Marchesi reached out to PB in an effort to arrange this inspection.  PB refused to respond until October 19, 2010, claiming that discovery had ended. Exhibit A.  PB made this claim knowing full well that discovery would be extended given the complexity of the issues and the looming consolidation of two identical cases these Plaintiffs chose to file separately.  In fact, about a week later, on October 26, 2010, discovery was extended in one of the cases, the Taub case, to December 31, 2009 (DE 28).

Magistrate Judge E. Thomas Boyle
Page 2

DuaneMorris

Throughout the entire month of November 2009, Plaintiffs continued to consistently frustrate Marchesi's efforts to inspect the wine.  Since all Marchesi's representatives are located in Italy, Marchesi designated the CEO of Marchesi's new importer, Jack Cacciato, as Marchesi's representative to attend the inspection with Marchesi's counsel.  PB objected to Mr. Cacciato's attendance at the public warehouse where PB is storing the wine on grounds that Mr. Cacciato is a competitor to PB.  To resolve this issue, Marchesi scrambled to find a wine person who PB would allow to attend the inspection with Marchesi's counsel.  When Marchesi located a volunteer from the wine industry, Carmine Vella, PB demanded detailed information about Mr. Vella, which Marchesi promptly provided.  After all of this, PB flat out refused to allow Marchesi to inspect, claiming that Mr. Vella had not been provided as a fact or expert witness and that discovery had closed.  Exhibit B.  Marchesi was forced to file a motion on November 23, 2009 for, *inter alia*, an order allowing it to inspect the wine.  (DE 112).[1]  With that motion unresolved, and discovery nearing its end, Marchesi still reached out to set a mutually convenient time to inspect the wines, which led nowhere.  Indeed, only after this Court's December 3, 2009 order to show cause did PB agree to allow Marchesi to inspect the wine at issue.  (DE 48).

Due to scheduling and logistical conflicts between the parties and Mr. Vella (who was volunteering his time), the inspection was not scheduled until March 12, 2010.  PB's Director of Operations and Logistics Frank Vella was present during the inspection.  During the inspection, Marchesi removed over 30 bottles of wine as samples for testing.  Mr. Vella, PB's employee, observed Marchesi removing these sample bottles from the warehouse.  Critically, Plaintiffs knew that Marchesi was removing samples and never objected.  Exhibit C.

After the inspection, Marchesi sent the wines to ETS Laboratory for testing.  ETS is the same laboratory where PB had the wine at issue tested back in 2008, when the problems occurred.  Exhibit D.  In April 2010, under the direction of Dr. Burns, ETS ran the same tests for Marchesi it has performed in 2008 for PB.  Exhibit E.  The Court should note that the wine samples were not immediately sent for testing because Marchesi focused its time and recourses on the settlement conference, which was scheduled for March 23, 2010 (DE 73).  Marchesi had every intention of negotiating in good faith with Plaintiffs, who unfortunately maintained their unreasonable damages demands.  When the settlement conference fell through, Marchesi resumed its litigation focus and sent the wines to ETS for testing.  The samples had to be sent from New Jersey to California via ground transportation which took time.  The wine sample tests were completed on April 23, 2010 and subsequently produced.

Marchesi did not disclose Dr. Burns because Marchesi was going to use the center exclusively for test taking purposes.  Marchesi sought to depose Dr. Burns *only after* PB unreasonably challenged the authentication of *all* ETS tests, including the ones PB had ETS

---

1 The referenced motion was made to Magistrate Judge Tomlinson, who was assigned to this case before Your Honor was assigned to this matter on December 12, 2009 (DE 51).  Magistrate Judge Tomlinson ruled on that motion April 26, 2010 (DE 129).

Magistrate Judge E. Thomas Boyle
Page 3



perform and which PB produced.  Exhibit F.  Plaintiffs' steadfast challenge of the authenticity of all wine tests forced Marchesi to seek the deposition of ETS Laboratory's director.  Dr. Burn's testimony at the deposition will authenticate the procedure ETS used to test both Marchesi and Plaintiffs' wine samples.  Plaintiffs will not suffer prejudice as they claim, but will benefit from this deposition because the tests of their wine samples will also be authenticated.  Moreover, Plaintiffs will have an opportunity to cross-examine Dr. Burns, a person with whom they are very familiar as they previously retained him to test this wine.

Critically, the settled law contravenes Plaintiffs' request for drastic relief.  "FED. R. CIV. P. 37(c)(1) provides that '[a] party that without substantial justification fails to disclose information required by Rule 26(a) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed." *Giordano v. Pgt Indus.*, 2007 U.S. Dist. LEXIS 88016, at *14 n.2  (S.D.N.Y. November 30, 2007) (" Plaintiff's untimely disclosure of the Lindt report, though a failure to comply with the requirements of the rules, <u>is harmless</u>.  Defendants have adequate time to depose Mr. Lindt ... Furthermore, the preclusion of expert testimony under Rule 37 is '<u>a drastic remedy and should only be applied in those rare cases where a party's conduct represents  flagrant bad faith and callous</u> disregard of the Federal Rules of Civil Procedure.'") (Emphases added,  brackets and ellipses in original) Indeed, parties' settlement negotiations is justification for non-disclosure of experts. *See Hinton v..Patnaude*, 162 F.R.D. 435, 440 (N.D.N.Y. 1995) ("Plaintiff's counsel and County Defendant's counsel entered into discussions regarding settlement of the claims against the County defendants.  As a result of <u>pending settlement</u>, Plaintiff's counsel suspended further trial preparation involving experts ... the <u>untimely disclosure of the expert witnesses</u> by Plaintiff was <u>harmless, as well as substantially justified</u>.") (citing Fed R. Civ. P. 37(c)(1); 8A Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d section 2289.1) (emphases added).

Here, Plaintiffs are not harmed, Plaintiffs are helped, because Dr. Burns's testimony will authenticate *all* analyses of the wine.  PB's insistence on keeping Dr. Burns from examination, a man who PB hired in 2008 to analyze the wine at issue, leaves Marchesi wondering what PB is so worried about.  The trial has been adjourned to mid July, which moots Plaintiffs' fear of a deposition on the "eve" of trial.  Moreover, Marchesi has substantial justification for its "late" disclosure and deposition of Dr. Burns - Plaintiffs consistent and incessant obstruction of Marchesi's efforts to inspect, sample and test the wine.  Marchesi is forced to seek Dr. Burns' deposition because Plaintiffs are unreasonably challenging the authenticity of all wine tests, even the tests they requested ETS perform.  At all times, Marchesi has acted in good faith, but its good faith is consistently thwarted by Plaintiffs' insistence on gamesmanship.

Based on the foregoing, this Court should deny Plaintiffs' motion for a protective order in its entirety, and allow Marchesi to depose Dr. Burns.

Magistrate Judge E. Thomas Boyle
Page 4

DuaneMorris

We thank the Court for its consideration.

Very truly yours,

s/Rachael G. Pontikes

Rachael G. Pontikes

Enclosures:

CC: ALL COUNSEL OF RECORD VIA ECF

4