UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

DAVID S. TAUB and MARC TAUB         Cons. Case No.: 09 CV 599
                                    09 CV 601 (ADS)(ETB)

                Plaintiffs,

   - against –

MARCHESI DI BAROLO S.P.A.,

                Defendant.
------------------------------------------------------------------X

PALM BAY INTERNATIONAL, INC.

                Plaintiff,

   - against –

MARCHESI DI BAROLO S.P.A.,

                Defendant.
------------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING ANY CONTRACT, AGREEMENT, OR UNDERSTANDING BETWEEN <u>PALM BAY INTERNATIONAL, INC. AND DARDEN RESTAURANTS, INC.</u>

                        Ettelman & Hochheiser, P.C.
                        Attorneys for Plaintiffs
                        100 Quentin Roosevelt Boulevard
                        Suite 401
                        Garden City, New York 11530
                        (516) 227-6300

**PRELIMINARY STATEMENT**

Defendant Marchesi Di Barolo S.p.A's. ("Marchesi") motion *in limine* pursuant to Fed. R. Evid. 401 and 403 to exclude certain evidence about Plaintiff Palm Bay International's ("Palm Bay") relationship with Olive Garden concerning the supply of Moscato d'Asti ("Moscato") manufactured by Marchesi (the "Moscato Program") must fail for several reasons, particularly the following:

First, Marchesi grossly misstates the law regarding alcohol regulation. In particular, the three tier system does not ban contracts between importers and retailers, as Marchesi suggests, but only requires that distributors purchase wine from importers, retailers purchase wine from distributors, and the consumer purchase wine from retailers. Hence, three tiers. In this case it is not disputed that all of the Moscato wine was purchased by Olive Garden from independently operated distributors, who in turn purchased the wine from Palm Bay. Thus, there was nothing "illegal" about Palm Bay and Olive Garden's relationship, as Marchesi repeatedly suggests.

Second, despite Marchesi's suggestion, at no point in time have Plaintiffs alleged that any understanding or agreement between Palm Bay and Olive Garden created a "legally binding" contract such that Olive Garden was obligated to purchase Moscato from Palm Bay. The allegation is that there was an understanding between Olive Garden and Palm Bay that Olive Garden would feature the Moscato in its nearly 700 restaurants across the United States, that Palm Bay would import the wine from Marchesi, and that Palm Bay would sell the wine to its independently operated distributors across the country, who in turn would sell the wine to Olive Garden to support Olive Garden's requirements. Thus, Marchesi is merely making an strawman argument in an attempt to

limit Palm Bay's ability to discuss its relationship with Olive Garden in full, specifically the particularities of the Olive Garden Moscato Program. Certainly, all aspects of the relationship between Olive Garden and Palm Bay (and their understanding of that relationship) as it concerns the purchase of the Moscato is relevant to the issues of the case, particularly whether Olive Garden would have continued to purchase Moscato vis-à-vis lost profit damages. Thus, the evidence cannot be excluded based on relevancy pursuant to Fed. R. Evid. 401.

Third, Marchesi asserts that even if such evidence is relevant, it is prejudicial or confusing to the jury pursuant to Fed. R. Evid. 403. While Plaintiffs' do not understand many of the connections Marchesi asserts in support of its motion, particularly with regard to Palm Bay's settlement of claims with Olive Garden, Marchesi has not demonstrated that such evidence is prejudicial, and in fact, grossly underestimates the sophistication of the jury in sorting these issues out.

## ARGUMENT

### I.  LEGAL STANDARD FOR MOTION *IN LIMINE*

"The Federal Rules of Evidence favor the admission of all relevant evidence." *Scott v. City of New York*, 591 F. Supp. 2d 554, 557 (S.D.N.Y. 2008). Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." *United States v. Chan*, 184 F. Supp. 2d 337, 340 (S.D.N.Y. 2002). "The trial court should exclude evidence on a motion *in limine* only when the evidence is clearly

inadmissible on all potential grounds." *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164 (S.D.N.Y. 2006). "Indeed, courts considering a motion *in limine* may reserve judgment until trial, so that the motion is placed in the appropriate factual context." *Chan*, 184 F. Supp. 2d at 340. "Moreover, a court's ruling regarding a motion in limine is subject to change when the case unfolds. Indeed even if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling." *Scott*, 591 F. Supp. 2d at 557. (Internal citations omitted).

Marchesi's instant application seeks to exclude evidence related to Palm Bay's relationship with Olive Garden (i.e. the understanding) because it asserts the evidence is not relevant pursuant to Fed. R. Evid. 401, and even if the evidence is relevant, it is highly prejudicial to the jury and must be excluded pursuant to Fed. R. Evid. 403. However, as will be described below, the evidence is clearly admissible because (1) it is relevant because it has the tendency to make the probability of any fact more likely, and (2) its probative value outweighs any prejudicial effect, if any.

## II.   EVIDENCE CONCERNING PALM BAY'S RELATIONSHIP WITH OLIVE GARDEN IS RELEVANT EVIDENCE

Marchesi's first argument to exclude evidence concerning a "legally binding contract, agreement, or understanding" between Palm Bay and Darden is that the evidence is not relevant. *See generally Fed. R. Evid. 401*; *United States v. Basciano*, 430 F. Supp. 2d 87, 91–92 (E.D.N.Y. 2006) ("Relevant evidence is defined as 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' Rule 401. This is a very expansive definition.")  In sum, Marchesi asserts that the evidence is not relevant because any relationship between Palm Bay and Olive

3

Garden was "illegal."

Marchesi's argument must fail for two reasons. <u>First</u>, its assertion that all agreements (and even understandings) between an importer and a restaurant are per se illegal is a gross misstatement of the law. In fact, not one of the cases cited by Marchesi even concern the issue of agreements or understandings between an importer and a retailer, such as the Olive Garden; no such cases exist. Rather, the cases cited by Marchesi stand for the proposition that alcohol is generally supplied pursuant to a three tiered system (adopted by the states pursuant to the powers delineated in the 21st Amendment), and that sale of alcohol to retailers must be done by way of a distributor.

In this case, it is undisputed that this is exactly what occurred; Marchesi sold the Moscato to Palm Bay, who in turn sold it to distributors, who in turn sold it to Olive Garden. The only understanding or agreement between Palm Bay and Olive Garden was for Palm Bay to make a certain number of cases of Moscato available to Palm Bay's distributors, who would in turn supply Moscato to the Olive Garden. This type of understanding is not illegal because it doesn't call for Palm Bay to supply wine to Olive Garden, and as Doug Jackson testified, this type of arrangement is frequently done in the wine industry and by Olive Garden in particular. (Exhibit 1, Jackson Dep., pp. 37, 59)("Most suppliers call on all the larger restaurant chains on a national level…") ("We work very closely with distributors, suppliers, and importers. Although, the process of purchasing the product directly always goes down to the distributor level, we still work with our suppliers on identifying new products that would be implemented to our restaurants.") In fact, Jackson testified that the reason Olive Garden often deals with the importer and not the individual distributor regarding rolling out national programs is the

4

geographic fragmentation of the distributors, and the fact that an importer operates on a national basis. (Exhibit 1, Jackson Dep., p. 35)("One of the roles and functions of a supplier is to present new products to their restaurant customer base on a national – you know more of a global level than an individual unit level. . . .The distribution network is very fragmented across the country. We do business with 1,600.")

  <u>Second</u>, it is important to note that Palm Bay is not asserting that any agreement with Olive Garden was legally binding (as Marchesi claims), such that Olive Garden was required to purchase the Moscato from Palm Bay. Palm Bay has not asserted such a claim because the recovery of lost profit damages related to the Moscato is not dependent on whether Palm Bay had a legally binding agreement with Olive Garden. *See Precise-Marketing Corp. v. Simpson Paper Co.*, No. 95 CIV 5629(RJW), 1999 WL 259518, at *11 (S.D.N.Y. Apr. 30, 1999) ("While it is true that these contracts may not be enforceable since the statute of frauds generally requires that such agreements be put in writing, the Court finds no support, nor does defendant provide any, for the proposition that a plaintiff must prove that its contracts with third parties are legally enforceable to recover for lost profits. All the law requires is that plaintiff prove it would have sold the paper had defendant not breached the alleged oral requirements contracts and that it lost measurable profits as a result.")

  Moreover, the relevant testimony cited by Marchesi, namely Marc Taub, Michael Petteruti and Doug Jackson, were all lay witnesses not qualified to testify whether any such understanding was legally binding. In fact, all of the testimony was qualified on this point. For instance, Marc Taub testified that he wasn't sure if it was a "contract" and Marchesi's attorney specifically stated "I am not asking you to legally opine as to

5

whether legally that constitutes a contract," (Exhibit 2, M. Taub Dep., pp. 174-75); Michael Petteruti testified, "I would characterize it…," (Exhibit 3, Petteruti Dep., p. 209), and the question was objected to because it called for a legal conclusion; and Doug Jackson's testimony was similarly qualified, "He's obviously not an attorney…using the words 'contracts, agreements, obligations.' I just want to make sure we're not getting caught up on technical legalese here" (Exhibit 1, Jackson Dep., p. 57).

Rather, evidence concerning the parties' relationship, and whether Olive Garden and Palm Bay had an "understanding" or an "agreement" concerning the supply of Moscato is relevant in order to demonstrate whether Palm Bay would have continued to sell Moscato to Olive Garden for purposes of calculating lost profit damages. In this regard, Doug Jackson's testimony was clear that the Moscato Program would have continued if not for the defects in the wine. (Exhibit 1, Jackson Dep., pp. 163-64) Therefore, it cannot be seriously disputed that Olive Garden's and Palm Bay's understanding as to their relationship has the "tendency to make the existence of any fact," namely the continuation of the Moscato Program, "more probable or less probable than it would be without the evidence." *See* Fed. R. Evid. 401. Whether the understanding is "legally binding" is not the point. In fact, the only reason Marchesi would like to exclude such evidence, is not because it is not relevant, but because it proves Plaintiffs' case, and Marchesi would like to limit Palm Bay's ability to fully and accurately describe the nature of its relationship with Olive Garden regarding the Moscato Program.

### III. THE EVIDENCE IS NOT PREJUDICIAL

Marchesi's second argument to exclude evidence related to the parties'

relationship is that the evidence will confuse or mislead the jury. However, exclusion of evidence pursuant to Fed. R. Evid. 403 based on supposed prejudice is an extraordinary remedy that should be used sparingly. *See U.S. v. Ballesteros Gutierrez*, 181 F.Supp.2d 350, 354 (S.D.N.Y.,2002) ("To begin with, Rule 403 permits exclusion of relevant evidence on grounds of prejudice only where the prejudice would be unfair."); *George v. Celotex Corp.*, 914 F.2d 26, 31 (2d Cir. 1990) ("Because Rule 403 permits the exclusion of probative evidence, it is an extraordinary remedy that must be used sparingly."); *see also Highland Capital Management, L.P. v. Schneider*, 551 F.Supp.2d 173, 177 (S.D.N.Y. 2008). In this regard, Marchesi fails to explain how such evidence is prejudicial and "unfair," or even why it should be excluded.

In fact, Marchesi's whole argument seems incoherent and makes little sense. Marchesi asserts that it "believes that Palm Bay seeks to introduce evidence that it had a contractual relationship with Darden in order to improperly characterize its illegal payment of $1.1 million in printing costs to Darden as a 'settlement" payment.' In due respect, Plaintiffs do not see the connection between the settlement of claims and the evidence Marchesi seeks to exclude. This is because the settlement of liability by Olive Garden against Palm Bay was never premised on a direct breach of contract theory between the two entities, as Marchesi suggests.

Rather, just as Marchesi is liable to Palm Bay for supplying non-conforming and unmerchantable goods (U.C.C. § 2-314), Palm Bay and its distributors would also have been similarly liable for supplying non-conforming goods to Olive Garden under the Uniform Commercial Code. Although Palm Bay did not sell the goods to Olive Garden, it still would have been subject to third party liability because it supplied the defective

goods to its distributors. In addition, Palm Bay and its distributors also would also have been liable to Olive Garden for product defect (for which Palm Bay would have been directly liable) and breach of contract claims. *See Pierre-Louis v. DeLonghi America, Inc.,* 66 A.D.3d 859, 860, 887 N.Y.S.2d 628, 630 (2d Dept. 2009) ("'[A] manufacturer may be held liable for placing into the stream of commerce a defective product which causes injury.' This burden is also imposed on a 'wholesaler, distributor, or retailer who sells a product in a defective condition'") (internal citations omitted); *see also Candela v. City of New York*, No. 117686/00, 2009 WL 981344, 3 (N.Y. Sup. Ct. March 31, 2009). These are the specific claims to which Palm Bay provided restitution. To say that the jury will confuse these claims with any understanding between Palm Bay and Olive Garden makes little sense and such argument must be rejected.

## CONCLUSION

For all of the reasons set forth herein, it is respectfully submitted that this Court deny Defendant Marchesi's motion in *limine* regarding Palm Bay's relationship with Olive Garden.

Dated: Garden City, New York
      May 21, 2010

                                      ETTELMAN & HOCHHEISER, P.C.

                                      By:_____s/_____
                                          Gary Ettelman (GE-9315)
                                      Attorneys for Plaintiffs
                                      100 Quentin Roosevelt Blvd., Suite 401
                                      Garden City, New York 11530
                                      (516) 227-6300

## **CERTIFICATE OF SERVICE**

      I hereby certify that on May 21, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all attorneys of record.

                                              ETTELMAN & HOCHHEISER, P.C.

                                        By:       /s/
                                              Gary Ettelman (GE-9315)
                                            Attorneys for Plaintiffs
                                            100 Quentin Roosevelt Blvd., Suite 401
                                            Garden City, New York 11530
                                            (516) 227-6300