UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

DAVID S. TAUB and MARC TAUB           Cons. Case No.: 09 CV 599
                                                                 09 CV 601 (ADS)(ETB)

                          Plaintiffs,

                 - against –

MARCHESI DI BAROLO S.P.A.,

                          Defendant.
-------------------------------------------------------------X

PALM BAY INTERNATIONAL, INC.

                          Plaintiff,

                 - against –

MARCHESI DI BAROLO S.P.A.,

                          Defendant.

-------------------------------------------------------------X

**PLAINTIFFS' REPLY MEMORANDUM OF LAW IN SUPPORT
OF THEIR MOTION FOR JUDGMENT AS A MATTER OF LAW**

                                                         Ettelman & Hochheiser, P.C.
                                                         Attorneys for Plaintiffs
                                                         100 Quentin Roosevelt Boulevard
                                                         Suite 401
                                                         Garden City, New York 11530
                                                         (516) 227-6300

**TABLE OF CONTENTS**

                                                            **Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

    I.    MARCHESI'S CURE WAS LEGALLY INEFFECTIVE ONCE
         OLIVE GARDEN CANCELLED THE MOSCATO PROGRAM ........................... 2

        A.  The Law Requires Palm Bay Be Put In As Good a
            Position As If Marchesi Had Fully Performed ............................................ 2

        B.  Plaintiffs Properly Raised the Issue of Cure in
            Their Rule 50(a) Motion to the Court ......................................................... 3

        C.  Plaintiffs Properly Object to Jury Instructions Regarding Cure ............................ 5

        D.  Marchesi's Argument Concerning Interference Has No Support
            In the Record .................................................................................................. 6

    II.   MARCHESI DID NOT TENDER A CURE TO
         PALM BAY WITHIN THE TIME REQUIRED BY
         THE PARTIES' CONTRACT ...................................................................................... 7

    III.  PALM BAY DID NOT BREACH THE DISPUTE RESOLUTION
          PROVISION BECAUSE IT WAS A NON-EXCLUSIVE REMEDY
          AND WAS A MERE AGREEMENT TO AGREE ....................................................... 8

    IV.  THE JURY'S VERDICT THAT THE TAUBS' BREACHED
          THEIR FIDUCIARY DUTY IN TAKING THE SET-OFF MUST
          BE REVERSED BECAUSE SUCH A DUTY WAS OUTSIDE THE
          SCOPE OF THE BARTIES' RELATIONSHIP ........................................................... 10

CONCLUSION ........................................................................................................................ 11

## **TABLE OF AUTHORITIES**

Page(s)

CASES

*Afolabi v. Jones*,
  2008 WL 4890166 (E.D.N.Y. Nov 12, 2008)...................................................................................2

*AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*,
  11 N.Y.3d 146, 896 N.E.2d 61 (2008)...........................................................................................10

*Allied Semi-Conductors Int'l, Ltd. v. Pulsar Components Int'l, Inc.*,
  907 F. Supp. 618 (E.D.N.Y. 1995) ...............................................................................................7, 8

*Amerol Corp. v. Am. Chemie-Pharma, Inc.*,
  No. CV 04-0940(JO), 2006 WL 721319 (E.D.N.Y. Mar. 17, 2006) .........................................3

*Avents Environmental Science USA v. Scotts Company*,
  383 F. Supp 2d 488 (S.D.N.Y. 2005)...............................................................................................9

*Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*,
  601 F. Supp. 770 (S.D.N.Y. 1985) .................................................................................................10

*Candid Prods., Inc. v. Int'l Skating Union*,
  530 F. Supp. 1330 (S.D.N.Y. 1982).................................................................................................9

*Canusa Corp. v. A & R Lobosco, Inc.*,
  986 F. Supp. 723 (E.D.N.Y. 1997) .................................................................................................2

*Cliffstar Corp. v. Elmar Industries, Inc.*,
  254 A.D.2d 723, 678 N.Y.S.2d 222 (4th Dept. 1998) .................................................................3

*Cramer v. Devon Group, Inc.*,
  774 F. Supp. 176 (S.D.N.Y. 1991) .................................................................................................10

*Dopp v. Teachers Ins. & Annuity Ass'n of Am.*,
  No. 91 Civ. 1494 (CSH), 1993 WL 404076 (S.D.N.Y. Oct. 1, 1993).....................................10

*G. A. Thompson & Co. v. Wendell J. Miller Mortg. Co.*,
  457 F. Supp. 996 (S.D.N.Y. 1978) .................................................................................................2

*Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*,
  136 F.3d 276 (2d Cir. 1998)............................................................................................................5

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*,
  748 F.2d 729 (2d Cir. 1984)..........................................................................................................10

*Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*,
  52 N.Y.2d 105, 417 N.E.2d 541 (1981) .................................................................................. 9

*Kirsch v. Fleet St., Ltd.*,
  148 F.3d 149 (2d Cir. 1998) ................................................................................................... 5

*Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*,
  21 Wash. App. 194, 584 P.2d 968 (App. Ct. 1978) ............................................................. 2, 6

*Nationwide Mut. Ins. Co. v. United Computer Capital Corp.*,
  No. 16340, 1994 WL 78640 (Ohio App. 9th Dist. Mar 16, 1994) ....................................... 2, 6

*Palazzetti Import/Export, Inc. v. Morson*,
  No. 98 CIV. 722(FM), 2001 WL 1568317 (S.D.N.Y. Dec. 6, 2001) ..................................... 9

*Papa Gino's of Am., Inc. v. Plaza at Latham Assocs.*,
  135 A.D.2d 74, 524 N.Y.S.2d 536 (3d Dept. 1988) .............................................................. 9

*Pittman by Pittman v. Grayson*,
  149 F.3d 111 (2d Cir. 1998) ................................................................................................... 5

*Sinco, Inc. v. Metro-North Commuter R.R. Co.*,
  133 F. Supp. 2d 308 (S.D.N.Y. 2001) ................................................................................ 7, 8

*Sinco, Inc. v. Metro-North Commuter R.R. Co.*,
  2001 WL 1609388 (S.D.N.Y. Dec 17, 2001) ...................................................................... 2, 7

*Smith v. A World of Pups, Inc.*,
  27 Misc. 3d 1236 (N.Y. City Civ. Ct. June 15, 2010) ............................................................ 2

*Travelers Indem. Co. v. Maho Mach. Tool Corp.*,
  952 F.2d 26 (2d Cir. 1991) ..................................................................................................... 2

*Vacold LLC v. Cerami*,
  545 F.3d 114 (2d Cir. 2008) ................................................................................................... 9

STATUTES

U.C.C. § 1-106 ............................................................................................................................... 2

U.C.C. § 2-508 ...................................................................................................................... 1, 7, 8

U.C.C. § 2-714(1) .......................................................................................................................... 2

OTHER AUTHORITIES

Fed. R. Civ. P. 50 ............................................................................................................... 1,3-5, 11

Fed. R. Civ. P. 59 .................................................................................................................... 2, 11

## **PRELIMINARY STATEMENT**

Unable to refute the legal principals argued by Plaintiffs Palm Bay International, Inc. ("Palm Bay"); David Taub; and Marc Taub (collectively the "Plaintiffs") in their initial Memorandum in support, Defendant Marchesi di Barolo S.p.A. ("Marchesi") instead grasps at baseless procedural straws to try and support an unsupportable verdict. Particularly, in its opposition, Marchesi wrongly asserts that Plaintiffs failed to raise certain arguments concerning the ineffective nature of Marchesi's so-called "cure" during their Fed. R. Civ. 50(a) motion, yet such arguments were clearly made by Plaintiffs' counsel and are contained in the transcript. Such tactics are a mere attempt by Marchesi to distract from the overwhelming case law, which holds that in order for a "cure" pursuant to the Uniform Commercial Code ("U.C.C." or the "Code") to be legally effective, it must encompass more than just the tendering of replacement product, it must also put the non-breaching party in the same position as if no breach had occurred. In the present circumstance, not only was Palm Bay not put in the same position it would have been in had no breach occurred, but this was a factual impossibility. Once Olive Garden cancelled the lucrative Moscato Program, Palm Bay suffered substantial consequential damages (i.e. lost profits) that could not be remedied or fixed by Marchesi. Thus, any attempt to cure by Marchesi was both futile and ineffective; no amount of tendered replacement product would have remedied these damages.

In addition, Marchesi's opposition brief also fails to refute many of the other reasons mentioned in Plaintiffs' initial memorandum, namely: (1) Marchesi failed to cure because it did not put and hold conforming goods at Palm Bay's disposition and give Palm Bay notification reasonably necessary to enable it to take delivery; (2) Marchesi did not make a conforming tender within the time provided by the contract time; (3) the dispute resolution provision in the Importation Agreement was a non-exclusive remedy and a mere agreement to agree; (4) the set-off taken was outside the scope of the parties' fiduciary relationship and the parties were acting at arms' length.

1

Accordingly, for all of the reasons stated below and in Plaintiffs' initial motion papers, Plaintiffs hereby request the Court grant it judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative, a new trial pursuant to Fed. R. Civ. P. 59.

## ARGUMENT

### I. MARCHESI'S CURE WAS LEGALLY INEFFECTIVE ONCE OLIVE GARDEN CANCELLED THE MOSCATO PROGRAM

#### A. The Law Requires Palm Bay Be Put In As Good a Position As If Marchesi Had Fully Performed

As stated in Plaintiffs' initial Memorandum, one of the most fundamental aspects of the U.C.C. is "to put the aggrieved party in as good a position as if the other party had fully performed." *Afolabi v. Jones*, 2008 WL 4890166, at *5 (E.D.N.Y. Nov 12, 2008); U.C.C. § 1-106; *also Sinco, Inc. v. Metro-North Commuter R.R. Co.*, 2001 WL 1609388, at *3 (S.D.N.Y. Dec 17, 2001) ("As one learned treatise suggests, this liberal standard is consistent with the goal of the Code that aggrieved parties 'be put in as good a position as if the other party had fully performed.'"); *Canusa Corp. v. A & R Lobosco, Inc.*, 986 F. Supp. 723, 732 (E.D.N.Y. 1997); *G. A. Thompson & Co. v. Wendell J. Miller Mortg. Co.*, 457 F. Supp. 996, 999 (S.D.N.Y. 1978).

With regard to the issue of "cure," Courts have repeatedly applied this principal to mean that mere replacement of goods is ineffective without the remedying of all damages already suffered. *See Moulden & Sons, Inc. v. Osaka Landscaping & Nursery, Inc.*, 21 Wash. App. 194, 584 P.2d 968 (App. Ct. 1978); *Nationwide Mut. Ins. Co. v. United Computer Capital Corp.*, No. 16340, 1994 WL 78640, at *4 (Ohio App. 9th Dist. Mar 16, 1994); *Smith v. A World of Pups, Inc.*, 27 Misc. 3d 1236 (N.Y. City Civ. Ct. June 15, 2010); *Travelers Indem. Co. v. Maho Mach. Tool Corp.*, 952 F.2d 26, 30 (2d Cir. 1991). Other areas of the Code, particularly, U.C.C. § 2-714(1), which concerns acceptance of defective merchandise, support this interpretation because it permits the recovery of consequential damages, but does not permit a breaching seller the opportunity to cure. Accordingly, because the

2

classification of whether a good has been rejected, revoked, or accepted does not impair any other remedy provided for in Article 2, this principle must be applied consistently throughout the Code. *See Amerol Corp. v. Am. Chemie-Pharma, Inc.*, 2006 WL 721319, at *7 (E.D.N.Y. Mar. 17, 2006) ("The provisions governing acceptance, rejection, and revocation define the buyer's obligation to pay for goods. However, they do not define the limits of the buyer's right to seek relief for damages caused by a seller's delivery of defective goods. That is, even a buyer who does *not* timely reject or revoke acceptance of a shipment of defective goods may sue the seller for damages caused by the defect."); *Cliffstar Corp. v. Elmar Industries, Inc.*, 254 A.D.2d 723, 724, 678 N.Y.S.2d 222, 223 (4th Dept. 1998).

In the present circumstances, Marchesi could not cure, and any cure offered by Marchesi was futile because once Olive Garden cancelled the Moscato Program, Palm Bay suffered unfixable damages. To use a children's nursery rhyme as an example, once Olive Garden cancelled the Moscato Program, "All the king's horses and all the king's men, Couldn't put [the Moscato Program] together again." That is, once the program was cancelled because of Marchesi's breach, the only remaining issue was not whether Marchesi had the ability to provide replacement goods (because doing so would not have put Palm Bay in the same position absent the breach), but rather the amount of damages Palm Bay suffered as a result. In fact, with respect to the issue of cover, the Court stated something very similar, "The evidence here is that for the short time that they had, they did attempt to obtain replacement goods. And on February 21st, 2008, Olive Garden canceled the program. So the reason to obtain this merchandise was done. Cover at that point was no longer an issue. They couldn't cover. Impossible." (Tr. 2151-52).

Therefore, for the above reasons this Court must find that any cure offered by Marchesi was legally ineffective and that Plaintiffs are entitled to a judgment as matter of law.

### B. Plaintiffs Properly Raised the Issue of Cure In Their Rule 50(a) Motion to the Court

In its response, Marchesi asserts that this Court must ignore the overwhelming case law cited

3

by Plaintiffs in their motion because Plaintiffs did not raise the issue of a legally ineffective cure in their Rule 50(a) oral motion during trial. This is patently false.

Plaintiffs repeated raised the issue during trial (and even at the summary judgment stage) that any cure offered by Marchesi was legally ineffective ("futile"), because once Olive Garden cancelled the Moscato Program, Palm Bay suffered damages that were incapable of being cured. In particular, during Plaintiffs' Rule 50(a) motion, Plaintiffs made the following argument:

> And, in any event, whether or not they could have tendered a replacement prior to the termination of the agreement of the Moscato program by Olive Garden, and the evidence shows they did not, but **once Olive Garden terminated that program, there was no way. It was impossible to cure.**
>
> The testimony was very clear. Mrs. Abbona admitted she knew those purchase orders that were placed in the beginning of the program were placed specifically for the Olive Garden program. **Once the Olive Garden program was terminated, the issue of cure was no longer. And at that point in time it was only an issue of damages.** (Tr. 985-986) (emphasis added).

In fact, defense counsel acknowledged that this was Plaintiffs' argument. "If the Olive Garden cancelled the program, then cure would be futile, your Honor, that is what Palm Bay is saying." (Tr. 2283) Therefore, despite Marchesi's arguments to the contrary, Plaintiffs clearly raised the issue of a legally ineffective cure during its Rule 50(a) motion. For Marchesi to argue that somehow "futility" and "ineffectiveness" are wholly separate issues makes little sense and must be rejected. The fact that Palm Bay suffered damages by reason of the program's cancellation that could not be cured (and as the Court ruled, Plaintiffs did not have an obligation to cover), demonstrates that in the present context both "futility" and "ineffectiveness" are one and the same and were presented that way to the Court.

Additionally, Marchesi's opposition also provides an incorrect standard regarding the required specificity needed to be raised in a Rule 50(a) motion, with Marchesi utilizing an overly narrow and myopic standard. However, all that the rule requires is that the motion "must at least

4

identify the specific element that the defendant contends is insufficiently supported." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 164 (2d Cir. 1998). *See also Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 286 (2d Cir. 1998); *Pittman by Pittman v. Grayson*, 149 F.3d 111, 120 (2d Cir. 1998). The reason for this is "to give the claimant a fair opportunity to cure the defects in proof." *Id.* In this case, Plaintiffs' clearly raised the "specific element," namely the issue of cure, during their Rule 50(a) motion. Furthermore, Marchesi was given an opportunity to address these arguments, and was given clear notice as to Plaintiffs' position, as evidenced by the fact that it even argued the following (in an attempt to refute Plaintiffs' position, which is being renewed via this motion) during closing:

> Marchesi, one, has the right to cure because when a problem happens you don't just take out your checkbook and write a check in excess of $10 million, how could anyone do business if that was the status of things? That makes no sense and you know that. (Tr. 2487)

Thus, based on the above, Plaintiffs did not waive their argument regarding cure, because such issues were clearly raised in Plaintiffs' Rule 50(a) motion, and Marchesi was given a "fair opportunity" to address these issues at trial.

### C. Plaintiffs Properly Object to Jury Instructions Regarding Cure

Much like the above argument concerning the scope of Plaintiffs' Rule 50(a) motion, Marchesi similarly asserts that Plaintiffs' motion must fail (again opting for a procedural rather than a substantive attack) because Plaintiffs did not properly object to the Court's proffered jury instructions. However, such an argument belies the transcript.

> **Plaintiffs' Counsel:** And my third comment is that the one thing that was left out of the charge was Palm Bay's claim that because the -- the intended purpose of this product was the Olive Garden program, that the cancellation of the Olive Garden program as of February 21st, 2008, our claim that any cure after that date it was, is futile.
>
> **THE COURT:** Denied. (Tr. 2278)

Furthermore, in subsequent argument in which the Court provided an exception, Plaintiffs argued,

5

> [T]he instruction that we're talking about here is with respect to cure. They're saying they had the right to cure. That's about damages. And what damages are, are what damages reasonably flowed as a result of the breach. **And the question there is is the damages that reasonably flow from that breach the cancellation of that program and once that program is cancelled, therefore, and the damages are incurred, how can there be a cure?** (Tr. 2282) (emphasis added)

Therefore, for Marchesi to assert that Plaintiffs' did not preserve their objections concerning the issue of cure is simply incorrect and merely an attempt to deflect from the overwhelming case law regarding the issue of cure.

### D. Marchesi's Argument Concerning Interference Has No Support in the Record

Again, instead of directly addressing relevant case law such as *Moulden*, 21 Wash. App. 194 or *Nationwide Mut. Ins. Co.*, 1994 WL 78640, at *4, which hold that Palm Bay must be put in the same position as if no breach occurred, Marchesi attempts to twist the jury's verdict into something it is not. In particular, Marchesi asserts that the jury determined that Palm Bay had interfered with Marchesi's right to cure. However, not only is this patently false, but such arguments have absolutely no support in the record. In fact, based on the jury instructions and verdict form, the only determination the jury actually made concerning cure was that Marchesi "could have provided a conforming delivery of valid Moscato D'Asti…" See Pontikes Decl., Ex. 2. This is far from a determination that Palm Bay "interfered" with Marchesi's ability to cure (or even that Marchesi provided such goods). For Marchesi to make such an argument is clearly a rewriting of history.

In addition to being factually incorrect, such argument is also largely irrelevant because it centers merely on the tendering of replacement product, and not the issue of "cure," which in this case is markedly different. As argued at length above, once Olive Garden cancelled the Moscato Program because of the defective wine supplied by Marchesi, Palm Bay suffered substantial consequential damages (i.e. lost profits) that could not be remedied by the mere replacement of

6

goods. Rather, at that point, February 21, 2009, Palm Bay suffered incurable damages. Therefore, no matter how much replacement product Marchesi tendered to Palm Bay (and Marchesi admits that no actual product was tendered), such damages could not be remedied, and as a matter of law, any cure offered would be legally ineffective.

## II. MARCHESI DID NOT TENDER A CURE TO PALM BAY WITHIN THE TIME REQUIRED BY THE PARTIES' CONTRACT

This Court must also rule as a matter of law that Marchesi failed to cure its breach because it not did not make a "conforming tender" within the time required by the parties' contract, namely by December 1, 2007. Specifically, U.C.C § 2-508 requires the seller to notify the buyer of its intention to cure and to *actually* make a "conforming tender." *See Sinco, Inc. v. Metro-North Commuter R.R. Co.*, 133 F. Supp. 2d 308, 313–14 (S.D.N.Y. 2001); *Allied Semi-Conductors Int'l, Ltd. v. Pulsar Components Int'l, Inc.,* 907 F. Supp. 618, 625 (E.D.N.Y. 1995). In the present case, Marchesi failed miserably to carry its burden of proof that it tendered a sufficient cure within the contract period. In fact, there is absolutely no evidence that Marchesi undertook any efforts to provide "conforming tender." *See Sinco,* F. Supp. 2d at 313 ("Sinco, as the party attempting to effect a cure, had the burden to show that its proffered cure did, in fact, conform to the terms of the contract.") The only evidence offered by Marchesi at trial, viewed in the light most favorable to Marchesi, is that it had an agreement with Sella & Mosca, which would enable Sella & Mosca to produce new Moscato for the Olive Garden Program. Marchesi offered no evidence to show when Sella & Mosca could deliver the product. Rather, the evidence showed that the alleged replacement Moscato was never produced (or even ordered by Marchesi) because the Olive Garden cancelled the Moscato Program on or about the same day that Marchesi alleges to have made the agreement with Sella & Mosca. Thus, there is no evidence on the record that could support a finding by the jury that Marchesi had the "present ability" to cure because the replacement goods had not even been manufactured (or ordered) yet. Furthermore, without the goods having been manufactured, let alone ordered, they

7

could not have been held by Marchesi at the "buyer's disposition." *See Allied Semi-Conductors,* 907 F. Supp. at 625. Even more important though, because the alleged replacement goods had not been manufactured, it was a factual impossibility for Marchesi to have given Palm Bay "*any notification reasonably necessary to enable [it] to take delivery.*" *See Allied Semi-Conductors,* 907 F. Supp. at 625.

Furthermore, even if Marchesi had attempted to cure its breach by actually tendering conforming product, such a cure would have been untimely as the evidence established that "it was critically important" that delivery of the initial order be made by December 1, 2007. *Sinco,* 133 F. Supp. 2d at 313; *See* U.C.C. § 2-508 ("Where any tender or delivery by the seller is rejected because non-conforming *and the time for performance has not yet expired. . . .*") However, regardless, of the parties' contractual deadline, such delivery would also have been untimely pursuant to the Code because it would have occurred after the Olive Garden's cancellation. As the Court astutely noted, "The evidence here is that for the short time that they had, they did attempt to obtain replacement goods. And on February 21st, 2008, Olive Garden canceled the program. So the reason to obtain this merchandise was done." (Tr. 2151-52). Accordingly, since Marchesi offered no evidence it actually had the ability under any circumstances to deliver conforming product prior to the cancellation of the Program, it did not carry its burden to show it tendered conforming product in a timely manner.

### III. PALM BAY DID NOT BREACH THE DISPUTE RESOLUTION PROVISION BECAUSE IT WAS A NON-EXCLUSIVE REMEDY AND WAS A MERE AGREEMENT TO AGREE

In its opposition, Marchesi crafts a new argument, asserting for the first time that Section 7 of the Importation Agreement only required the parties to negotiate in good faith, but did not require them to actually reach a resolution. However, such a position belies the actual allegations and instructions to the jury, which is not that Palm Bay failed to negotiate in good faith, but that it actually "fail[ed] to *come* to a 'mutually satisfactory resolution.'" (Tr. 2565) This is a key distinction because it demonstrates that the jury held Palm Bay liable for failing to abide by an "agreement to

8

agree," not failing to negotiate. However, these type of clauses are legally enforceable for indefiniteness. *See Avents Environmental Science USA v. Scotts Company*, 383 F. Supp 2d 488, 511 (S.D.N.Y. 2005); *Candid Prods., Inc. v. Int'l Skating Union*, 530 F. Supp. 1330, 1336 (S.D.N.Y. 1982); *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 417 N.E.2d 541, 543 (1981) ("[I]t is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable.").

In addition, to being an unenforceable agreement to agree, the jury's verdict must also be reversed as a matter of law because the parties' agreement failed to provide that such clause was an "exclusive remedy." Pursuant to § 2-719, unless a given remedy is agreed by the parties to be exclusive, it is merely optional. § 2-719(1)(b) ("resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy."*); also Papa Gino's of Am., Inc. v. Plaza at Latham Assocs.*, 135 A.D.2d 74, 76, 524 N.Y.S.2d 536, 538 (3d Dept. 1988); *Vacold LLC v. Cerami*, 545 F.3d 114, 130 (2d Cir. 2008); *Palazzetti Import/Export, Inc. v. Morson*, 2001 WL 1568317, at *9 (S.D.N.Y. Dec. 6, 2001). Since the Importation Agreement fails to state that the requirement of "mutually satisfactory resolution" was an exclusive remedy, Palm Bay cannot be deemed to have committed a breach by seeking a different remedy when it took the set-off.

Lastly, in addition to the fact that the resolution provision of the importation agreement was unenforceable, judgment must also be entered as a matter of law because of the fact that the parties spent more than 11 months attempting to reach a "mutually satisfactory resolution," and that even after those 11 months, Marchesi still had not even reimbursed Palm Bay for the cost of the admittedly defective wine. Clearly, Palm Bay satisfied this provision of the Importation Agreement by negotiating with Marchesi for 11 months and judgment must be entered as a matter of law.

### IV. THE JURY'S VERDICT THAT THE TAUBS' BREACHED THEIR FIDUCIARY DUTY IN TAKING THE SET-OFF MUST BE REVERSED BECAUSE SUCH A DUTY WAS OUTSIDE THE SCOPE OF THE PARTIES' RELATIONSHIP

Judgment as a matter of law must be granted because the Taubs were not acting in the scope of their fiduciary relationship when they instructed Palm Bay to set-off the cost of the defective wine. *See generally*, *Cramer v. Devon Group, Inc.*, 774 F. Supp. 176, 184 (S.D.N.Y. 1991) (internal citations omitted); *AG Capital Funding Partners, L.P. v. State St. Bank & Trust Co.*, 11 N.Y.3d 146, 158, 896 N.E.2d 61, 68 (2008) ("A fiduciary relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other."). To hold otherwise would essentially prohibit any fiduciary from ever negotiating with its principal. In fact, in this case, because the parties were negotiating the dispute at arms' length (the Taubs were not acting as Marchesi's agents), the Taubs' cannot be held liable as fiduciaries. See *Dopp v. Teachers Ins. & Annuity Ass'n of Am.*, No. 91 Civ. 1494 (CSH), 1993 WL 404076, at *5 (S.D.N.Y. Oct. 1, 1993); *Beneficial Commercial Corp. v. Murray Glick Datsun, Inc.*, 601 F. Supp. 770, 772 (S.D.N.Y. 1985); *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 739 (2d Cir. 1984)

Furthermore, as documented by the only evidence presented at trial concerning the scope of the relationship, namely the Agency Agreement, the Taubs only had a limited fiduciary duty, namely the appointment of importers, distributors and wholesalers, and they were not acting within the scope of those relations when they instructed Palm Bay to take the set-off. (Agency Agreement § 1). In fact, no where are the Taubs' duties defined to include such things as acting as agents with respect to payment between the importer and Marchesi. In fact, in its opposition, Marchesi does not assert that the Taubs were obligated to act in such a manner.

Accordingly, this Court must hold as a matter of law that the Taubs were not acting as fiduciaries (and therefore could not have breached any fiduciary duty) when they instructed Palm Bay to take a set-off resulting from the supply of defective wine because (1) the parties were negotiating at arms' length; and (2) the Agency Agreement limited the scope of the parties' relationship.

10

## **CONCLUSION**

For all of the reasons set forth herein, it is respectfully submitted that this Court grant Plaintiffs' motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), or in the alternative for a new trial pursuant to Fed. R. Civ. P. 59.

Dated: Garden City, New York
      November 2, 2010

ETTELMAN & HOCHHEISER, P.C.


By:   /s  
    Gary Ettelman (GE-9315)
Attorneys for Plaintiffs
100 Quentin Roosevelt Blvd., Suite 401
Garden City, New York 11530
(516) 227-6300