UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
PALM BAY INTERNATIONAL, INC.,

                    Plaintiff,

     - against -

MARCHESI DI BAROLO S.P.A.,

                    Defendant.
------------------------------------------------------------x
DAVID S. TAUB and MARC TAUB,

                    Plaintiffs,

     - against -

MARCHESI DI BAROLO S.P.A.,

                    Defendant.
------------------------------------------------------------x

**MEMORANDUM OF**
**DECISION AND ORDER**
CV 09-599 (ADS)(AKT)

**A P P E A R A N C E S:**


    **ETTELMAN & HOCHHEISER, P.C.**
        Attorneys for Plaintiffs
        100 Quentin Roosevelt Boulevard, Suite 401
        Garden City, NY  11530
    BY:   Gary Ettelman, Esq. Of Counsel


    **DUANE MORRIS LLP**
        Attorneys for Defendant
        1540 Broadway
        New York, NY  10036
    BY:   Rachel G. Pontikes, Esq.
        Larry Selander, Esq.
        John Dellaportas, Esq., and
        Javier Chavez, Jr., Esq., Of Counsel

**SPATT, District Judge.**

The plaintiffs Palm Bay International, Inc., ("Palm Bay") and David S. Taub and Marc Taub (the "Taubs") (collectively the "plaintiffs") move for a post-judgment ruling granting to them a judgment as a matter of law pursuant to Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 50(b) or, in the alternative, a new trial pursuant to Fed.R.Civ.P. 59. For the reasons set forth below, the plaintiffs' motions are denied in part and granted in part.

## I. THE BACKGROUND

The facts in this case were initially stated in the Court's prior Memorandum and Decision and Order dated May 17, 2010. At the four week trial the facts were further set forth in greater detail. In this opinion the Court will review only the essential facts which, together with the applicable law, form the basis for this decision.

On January 1, 1994, defendant Marchesi Di Barolo S.P.A. ("Marchesi") and the Taubs entered into an "Agency Agreement," by the terms of which Marchesi appointed David Taub and Martin Taub as its exclusive sales agents in the United States. Martin Taub's interest in the agreement was later assigned to his grandson, the defendant Marc Taub. The Taubs are the owners of Palm Bay, a New York company that specializes in importing wine and spirits.

On February 7, 1994, Palm Bay entered into a written agreement with Marchesi for the exclusive right to import Marchesi's wine in the United States ("the Importation Agreement"). Among the terms of the agreement was the provision that payment for the wines must be made by Palm Bay 100 days from the date on the bill of lading.

In 2006 and 2007, Palm Bay engaged in discussions with its customer, the Olive Garden Restaurant chain with regard to the sale of a wine known as Moscato d'Asti wine ("Moscato") to be offered by Olive Garden in its 700 restaurants in the United States. On August 21, 2007,

2

Palm Bay gave Marchesi a written order for the Moscato wine. The wine was to be made available to all the Olive Garden restaurants on or about January 4, 2008. In October and November 2007, Marchesi began to deliver the first two installments of approximately 3,500 cases each of Moscato wine. The installments were in two lots, named Lot 291 and Lot 310.

In January 2008, Palm Bay began to receive reports from Olive Garden restaurants that the Moscato wine was defective. The evidence revealed that some of the bottles resembled either a cloudy appearance with sediment or a clear appearance with a noxious smell and taste. Palm Bay immediately notified Marchesi. On February 5 and 6, 2008, Marchesi directed that the Moscato Lot 291 be recalled from the market. Palm Bay incurred significant expenses in recovering the defective wine; in air-freighting replacement wine; and in a substantial payment to Olive Garden. Nevertheless, on February 21, 2008, Olive Garden cancelled the Moscato program, and would not accept any new wine product from Marchesi. This cancellation caused additional money damages to Palm Bay. In fact, Palm Bay paid Olive Garden the sum of $1.1 million in alleged damages.

Prior to and following the termination of the Olive Garden program, Palm Bay and Marchesi representatives met and exchanged communications to try to resolve various issues, without success. By this time, Palm Bay had paid Marchesi for all the Moscato. However, in a letter dated January 15, 2008, Palm Bay notified Marchesi that it was setting off the purchase price of the Moscato against other outstanding payments due to Marchesi under the terms of their Importation Agreement. Thereafter, on January 28, 2009, as a result of the "set-off", Marchesi sent a letter to Palm Bay and the Taubs terminating both the Importation Agreement and the Agency Agreement.

A major issue in this case was the alleged attempt by Marchesi to "cure" the problem

caused by the defective Moscato wine.  The cure by a seller of a defective delivery is governed

by the New York Uniform Commercial Code § 2-508, which reads as follows:

### § 2-508.  Cure by Seller of Improper Tender or Delivery; Re-placement

(1)  Where any tender or delivery by the seller is rejected because non-conforming and the time for performance has not yet expired, the seller may seasonably notify the buyer of his intention to cure and may then within the contract time make a conforming delivery.

(2)  Where the buyer rejects a non-conforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender.


## A.  <u>The Trial History</u>

A jury was selected on July 12, 2010 and the trial commenced on July 13, 2010 and

concluded on August 3, 2010.  The case went to the jury with regard to the following cause of

action and six counterclaims.

The plaintiff Palm Bay's cause of action – Breach of the Implied Warranty of

Merchantability.

The defendant's First Counterclaim –  Based on as to the payment set-off by Palm Bay.

The defendant's Second Counterclaim – Based on the failure of Palm Bay to pay for

conforming Marchesi wine within 100 days from the date on the bill of lading.

The defendant's Third Counterclaim – Based on the claim by Marchesi that Palm Bay

breached the Dispute Resolution provision of the Importation Agreement.

The defendant's Fourth Counterclaim – Based on the claim by Marchesi against Palm

Bay on an Agency Agreement term involving replacing defective wine on a "dollar for dollar"

basis.  However, as to this provision, the jury would first have to determine that Marches proved

that the Agency Agreement and the Importation Agreement were part of a single transaction and were to be construed as a single contract. The jury found that Marchesi failed to prove that the two agreements were part of a single transaction.

The defendant's Fifth Counterclaim – Based on the claim by Marchesi against David Taub and Marc Taub for breaching their fiduciary duty as agents by not considering any wine importer other than Palm Bay.

The defendant's Sixth Counterclaim – Based on the claim by Marchesi against David Taub and Marc Taub for breach of their fiduciary duty by instructing Palm Bay to take a set-off of the price of the wine.

**B. <u>The Verdict</u>**

As to the plaintiff's cause of action, the jury found that there was a breach of the implied warranty of merchantability by Marchesi, in that the Moscato wine was not reasonably fit for the intended use. However, the jury also determined that Marchesi proved the "cure" defense, namely that it notified Palm Bay of its intention to cure and, also, that "it could have provided a conforming delivery of valid conforming Moscato d'Asti wine sufficient to comply with Olive Garden requirements within the time specified in the arrangements between Palm Bay and Marchesi." (Verdict; question 2). Therefore, the plaintiff Palm Bay was not entitled to recover damages in its sole cause of action.

As to the first counterclaim, the jury was advised that, ". . . the Court has already determined that the plaintiff Palm Bay has breached the Importation Agreement by taking this set-off and failing to pay for certain Marchesi products, so that your function is to fix the damages caused by this set-off. The damages on the first counterclaim based on the set-off is for you to determine. It consists of the wine that was delivered and not paid for." The set-off was

for non-Moscato wine that was delivered to Palm Bay and was due and owing. The jury found that the total amount of monetary damages to be awarded to Marchesi on the first counterclaim was the sum of $519,552.68. The Court notes that Marchesi contended that the proper set-off damages was the sum of $597,335.48. However, the jury determined that the Palm Bay proposed lesser figure of $519,552.68 was the proper measure of damages.

As to the second counterclaim, the Court similarly advised the jury that it had already determined that "Palm Bay had no legitimate basis to withhold payment for the conforming wine. Therefore, Palm Bay breached that paragraph in the Importation Agreement." However, the jury was further instructed that the damages are the same as in the first counterclaim. "Do not compensate Marchesi twice for the same damages." As to the second counterclaim there was an additional contested request for the cost of relabeling the wine in the sum of $115,885.89. The jury, as in the first counterclaim, determined that the lesser sum of $519,557.68 was due to Marchesi and also declined to award it the additional sum requested for the cost of relabeling.

The third counterclaim was based on the defendant's assertion that Palm Bay breached the Dispute Resolution provision in the Importation Agreement. The jury found that Palm Bay breached this provision and awarded the same amount of damages of $519,552.68. As to the defendant's fourth and fifth counterclaims, the jury found in favor of the plaintiff.

The sixth and final counterclaim was against David Taub and Marc Taub for breach of their fiduciary duty in instructing Palm Bay to take the set-off of the price of the wine. Again, the Court instructed the jury that "the damages are the same as the first counterclaim, namely the unpaid wine deliveries." The jury found in favor of Marchesi in the sixth counterclaim, awarding the same amount of damages, namely the sum of $519,552.68.

## II. THIS MOTION AND THE CONTENTIONS OF THE PARTIES

**A.  The Plaintiff's Contentions**

The plaintiff Palm Bay brings this post verdict motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or, in the alternative, for a new trial pursuant to Fed.R.Civ.P. 59. These are the plaintiff's contentions:

1.  As to the plaintiff's cause of action for breach of the implied warranty of merchantability, the plaintiff contends that the defendant failed to prove the defense of "cure." The plaintiff contends that "As a matter of law, such 'cure' was deficient because it did not put Palm Bay in the position it would have been in but for the breach."  (Pltf's Motion at p. 1).  In this regard, the plaintiff contends that there was no "cure" as a matter of law because: (1) Palm Bay never received a tender of the purchase price; (2) Palm Bay incurred significant incidental costs in removing the defective product from the market place but never received a tender of those damages; (3) Palm Bay suffered lost profits as a result of the Olive Garden cancellation, but never received a tender of those damages; and (4) Palm Bay never received a replacement product.

It this regard the plaintiff also states that the jury verdict is "contrary to established law and the expressed purpose of the U.C.C. which is to put the non-breaching party in its intended position."  (Pltf's Motion at p. 2).  Stated otherwise, "Marchesi failed to cure because it did not put and hold conforming goods at Palm Bay's disposition and give Palm Bay notification necessary to enable it to take delivery."  Also, Palm Bay asserts that Marchesi "did not make a conforming tender within the time provided by the contract as required by U.C.C. § 2-508.

2.  As to the third counterclaim and the jury finding that Palm Bay breached the "Dispute Resolution Provision" of the Importation Agreement, the plaintiff contends this provision "was a non-exclusive remedy and was a mere agreement to agree and thus not binding on the parties."

3. With regard to the sixth counterclaim, the Taubs contend that "the set-off taken by Palm Bay was outside the scope of the Taubs and Marchesi's fiduciary relationship and that the parties were acting at arm's length." (Pltf's Motion at p. 2). Stated otherwise, the plaintiff's contend that "the Taubs were not acting as Marchesi's agents at the time of the set-off." (Pltf's Motion at p. 23). Because ". . . the Taubs at best had only a limited fiduciary duty, namely the appointment of importers, distributors and wholesalers, and they were not acting within the scope of these relations when they instructed Palm Bay to take the set-off." (Pltf's Motion at p. 23). Accordingly, the plaintiff's contend that this Court must hold, as a matter of law, that the Taubs were not acting as fiduciaries when they instructed Palm Bay to take the set-off.

**B.  The Response by the Defendant Marchesi**

The defendant presents a multifaceted response to the plaintiff's contentions. Initially, the defendant contends that this motion is essentially an attack on the jury's fact finding, which, according to Marchesi "are amply supported by this record."

In addition, the defendant contends that these contentions by Palm Bay have been waived.

As to the plaintiff's assertion that the proof did not set forth a valid "cure" defense, in addition to contesting the merits of this assertion, the defendant contends that this argument was not raised by the plaintiff Palm Bay at the proper time during the trial and therefore it is waived. In this regard, the defendant contends that the plaintiff's Rule 50(a) motion did not raise the claim that Marchesi's cure was legally ineffective because it did not make the plaintiff's "whole". The only contention raised by the plaintiff in the Rule 50(a) motion was that the cure was futile in that Olive Garden terminated the program. The defendant contends that the issue raised in this motion, namely, the supposed legal ineffectiveness of the cure is distinct from the

question of whether the cure was futile. Therefore the defendant contends that the plaintiffs are precluded from asserting the ineffectiveness of the cure defense in this Rule 50(b) motion.

Further, even assuming that the plaintiff's prior Rule 50(a) motion could be construed to contend that Marchesi's cure was legally ineffective because it did not cover all the damages allegedly sustained by Palm Bay, the defendant contends that it is untimely under Fed.R.Civ.P. 51(6)(2)(A). The defendant further contends that in the pre-charge conference the Court related to counsel its proposed charge. According to Marchesi no argument was made by the plaintiff that it could not legally offer a "cure" without first providing for the damages suffered by Palm Bay by reason of the breach of warranty, which is their present argument.

In addition, Marchesi supplements its waiver argument by the fact that at the time the Court addressed the content of the verdict sheet with counsel, "Plaintiffs again sat silent." (Dft's Response at p. 6). So that the plaintiff did not object to the form of the Verdict Sheet as to the cure defense. Again, at this time, no mention was made of the plaintiff's damages; instead the jury was to determine if Marchesi "could have provided a conforming delivery of valid conforming Moscato d'Asti wine sufficient to comply with Olive Garden requirements within the time specified in the arrangements between Palm Bay and Marchesi." (Verdict Sheet at question 2). Therefore, the defendant contends that this "cure" contention by the plaintiff is barred by the provisions of Fed.R.Civ.P. 51(c).

Further, as to the cure defense, Marchesi points to the jury finding in the third counterclaim. In that determination, the jury found that Palm Bay "refused to reach a mutually satisfactory solution concerning the defective Moscato d'Asti" by not accepting Lot 310 expedited by air-freight to the United States as a replacement for the defective wine in Lot 291, together with the majority of non-defective bottles in Lot 291, estimated to be in excess of

30,000 bottles, and the proposed Sella & Mosca Moscato wine, all of which could have filled any Olive Garden order.

An important issue addressed by Marchesi is its response to the plaintiff's contention that any wine would be futile because Olive Garden had already cancelled the Moscato program at the time the cure was rendered.  Not so, says Marchesi; the relevant efforts to cure took place prior to the termination of the Olive Garden – Moscato program which took place on February 21, 2008.  In this regard, Marchesi contends that there were three separate theories of cure: (1) Lot 310 constituted a replacement for Lot 291; (2) a new third party supplier Sella & Mosca, could have provided new replacement wine from its existing inventory; and (3) Petteruti of Palm Bay was told by Ernesto Abbona that Marchesi's employees would personally come to Palm Bay's warehouse in the United States and remove the defective bottles, estimated to be 6,000 in number, from Lot 291 thereby permitting the remaining good 34,000 bottles in Lot 291 to be resold.  In sum, the defendant contends that, as to the cure defense, there were proper factual issues for the jury concerning whether Marchesi could offer a proper cure under the provisions of § 2-508.

As to the third counterclaim, the defendants contends that the jury was presented with factual questions as to whether Palm Bay complied with the Dispute Resolution Provision in the Importation Agreement.  In response to the argument by Palm Bay that the Dispute Resolution Provision was not an exclusive remedy, Marchesi asserts that "it is at the very least a condition precedent to Palm Bay asserting other remedies."  In addition, Marchesi disputes the contention by Palm Bay that the provision was too indefinite to be enforceable.  Marchesi contends that "the requirement that the parties negotiate to settle disputes is enforceable."  Further, Marchesi

10

contends that although the parties did negotiate for a period of time, Palm Bay did not negotiate in good faith, as is required in all such agreements.

As to the sixth counterclaim based on breach of their fiduciary duty by the Taubs in instructing Palm Bay to take the set-off of the price of the good wine, the defendant contends that this was a question of fact for the jury and there is no basis to disturb their verdict. The defendant asserts that the Taubs, as agents, owed to Marchesi good faith, loyalty and honesty. As such, when the Taubs instructed Palm Bay to take the set-off, the jury could and did find that there was a breach of fiduciary duty.

Finally, the defendant contends that the plaintiff's Rule 59 motion for a new trial should also be denied in that the plaintiffs failed to demonstrate that the verdict was against the weight of the evidence. Marchesi asserts that the trial was about credibility and the jury chose to believe Marchesi's witnesses.

## III. **DISCUSSION**

### A. **The Standards**

#### 1. **As to Rule 50(b)**

In substance, Fed.R.Civ.P. 50(b) provides that if a jury returns a verdict for which there is not a legally sufficient evidentiary basis, the District Court may either order a new trial or direct the entry of judgment as a matter of law. "The same standard that applies to a pre-trial motion for summary judgment pursuant to Fed.R.Civ.P. 56 also applies to motions for judgment as a matter of law during or after trial pursuant to Rule 50." Piesco v. Koch, 12 F.3d 332, 341 (2d Cir. 1993); see also the Advisory Committee Note to 1991 Amendment of Fed.R.Civ.P. 50. This Rule is well and clearly explained in the seminal case of This Is Me, Inc. v. Elizabeth Taylor, 157 F.3d 139 (2d Cir. 1998). In Taylor, the Court commented that the then recent adoption of the term "judgment as a matter of law" to replace both the term "directed verdict" and the term "judgment N.O.V." was intended to call attention to the close relationship between Rule 50 and 56. 157 F3d at 142. The Court then went on to explain the basis for granting a post-verdict Rule 50 motion, as follows:

> A district court may not grant a motion for a judgment as a matter of law unless "the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." Cruz v. Local Union No. 3, Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1154-55 (2d Cir. 1994) (quoting Simblest v. Maynard, 427 F.2d 1, 4 (2d Cir. 1970)) (internal quotation marks omitted). Weakness of the evidence does not justify judgment as a matter of law; as in the case of a grant of summary judgment, the evidence must be such that "a reasonable juror would have been compelled to accept the view of the moving party." Piesco, 12 F.3d at 343.

Id.

The same explanation of a Rule 50 motion, was more recently stated in Fairbrother v. Morrison,

412 F.3d 39, 48 (2d Cir. 2005), in the following terms:

> This circuit has stated that judgment was a matter of law "may only be granted if there exists such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or the evidence in favor of the movant is so overwhelming 'that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" Luciano v. Olsten Corp., 110 F.3d 210, 214 (2d Cir. 1997) (quoting Cruz v. Local Union No. 3, 34 F.3d 1148, 1154 (2d Cir. 1994)) (alterations in original). The motion should be granted "only if [the court] can conclude that, with credibility assessments made against the moving party, a reasonable juror would have been compelled to accept the view of the moving party." Piesco v. Koch, 12 F.3d 332, 343 (2d Cir. 1993). The court cannot assess the weight of conflicting evidence, pass on the credibility of witnesses, or substitute its judgment for that of the jury." Tolbert v. Queens College, 242 F.3d 58, 70 (2d Cir. 2001) (quoting Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 367 (2d Cir. 1988)).

See also Fabri v. United Technologies International Inc., 387 F.3d 109, 119 (2d Cir. 2004) (same); Sanders v. New York City Human Resources Administration, 361 F.3d 749, 755 (2d Cir. 2004). A Rule 50(b) motion should be granted only when there is "such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture," or where there is "such an overwhelming amount of evidence" in favor of the moving party that fair minded jurors could not reasonably arrive at a verdict against the movant; Gronowksi v. Spencer, 424 F.3d 285, 292 (2d Cir. 2006) (Internal quotation marks omitted).

In reviewing the record to determine whether a motion for JMOL should be granted, 'the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weight the evidence 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097,

147 L.Ed.2d 105 (2000) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255, 106 S.Ct. 2505, 9 L.Ed.2d 202 (1986)).  A judgment as a mater of law is thus "proper only if 'the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached.'" <u>Fiacco v. City of Rensselaer</u>, 783 F.2d 319, 329 (2d Cir. 1986) (quoting <u>Simblest v. Maynard</u>, 427 F.2d 1, 4 (2d Cir. 1970)), cert. denied, 480 U.S. 922 (1987).  Also, in making this determination, the court "must disregard all evidence favorable to the moving party that the jury is not required to believe." <u>Reeves</u>, 530 U.S. at 151 120 S.Ct. 2017; <u>Meloff v. New York Life Insurance Company</u>, 240 F.3d 138, 145 (2d Cir. 2001).

Such motions "should be granted cautiously and sparingly."  9A Charles A. Wright & Arthur R. Miller, <u>Federal Practice and Procedure</u> § 2524, at 252 (1995); <u>Japan Airlines Company Ltd. v. Port Authority of New York & New Jersey</u>, 178 F.3d 103, 112 (2d Cir. 1999).  In ruling on a motion for judgment as a matter of law, the court may not itself weigh credibility or otherwise consider the weight of evidence; rather, it must defer to the credibility assessments that may have been made by the jury and reasonable factual inferences that may have been drawn by the jury.  (<u>See Williams v. County of Westchester</u>, 171 F.3d 98, 101 (2d Cir. 1999)).

**2.  <u>As to Rule 59</u>**

Here, the plaintiffs move for judgment as a matter of law, pursuant to Rule 50(b), "or in the alternative for a new trial, pursuant to Fed.R.Civ.P. 59."  In the plaintiffs' motion papers little is said about Rule 59.  In fact, a review of the Rule itself reveals little explanation with regard to the legal basis for the Rule, which reads in relevant part:

**Rule 59.  New Trial; Altering or Amending a Judgment**

(a)  In General.

> (1) Grounds for New Trial. The court may, on motion, grant a
> new trial on all or some of the issues – and to any party – as
> follows:
>
> > (A) after a jury trial, for any reason for which a
> > new trial has heretofore been granted in an action at
> > law in federal court.

Generally, the grant of a new trial under Rule 59 is warranted only if the district judge is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Sorlucco v. New York City Police Dept., 971 F.2d 864, 875 (2d Cir. 1992) (quoting Smith v. Lightning Bolt Productions, Inc., 861 F.2d 363, 370 (2d Cir. 1988)). In evaluating a Rule 59 motion, the trial judge's duty is essentially to see that there is no miscarriage of justice. Bevevino v. Saydjari, 574 F.2d 676, 684 (2d Cir. 1978). However, in general, as stated above, a motion for a new trial should not be granted unless the Court is "convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice." Sorlucco, 971 F.2d at 864; see also Nimely v. City of New York, 414 F.3d 381, 390 (2d Cir. 2005); Smith v. Nurse Carpenter, 316 F.3d 178 (2d Cir. 2003); Hugo Boss Fashions, Inc. v. Fed. Ins. Co., 252 F.3d 608, 623 (2d Cir. 2001).

In comparison to a Rule 50 motion, the Second Circuit has held that the standard for a Rule 59 motion in some respects is less onerous for the moving party in two ways: first, "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." DLC Management Corp. v. Town of Hyde Park, 163 F.3d 124, 134 (2d Cir. 1998). Second, in deciding a Rule 59 motion "a trial judge is free to weigh the evidence himself, and need not view it in the light most favorable to the verdict winner." Id.

**B. As to the "Cure" Defense**

**1. The Defendant Says "Waiver"**

In its verdict, the jury found that the defendant Marchesi breached the Implied Warranty of Merchantability in that the Moscato d'Asti wine was not reasonably fit for the intended use. However, in a separate question, the jury also determined that the defendant Marchesi proved: (a) that it notified Palm Bay of its intention to cure and (b) that it could have provided a conforming delivery of valid conforming Moscato d'Asti wine sufficient to comply with Olive Garden requirements within the time specified in the arrangements between Palm Bay and Marchesi.

In essence, Palm Bay now contends that Marchesi could not legally "cure" its breach of implied warranty of merchantability because it "could not remedy all the damages suffered by Palm Bay as a result of the sale of defective wine" to Olive Garden its important customer (plaintiff's motion at 16). In particular, Marchesi did not remedy the "lost profit damages" incurred when Olive Garden cancelled its Moscato program. In other words, the plaintiff contends that it was not made whole and therefore the attempts to cure by Marchesi were legally insufficient. The defendant responds that this requirement was not raised in the plaintiff's Rule 50(a) motion, and it is waived.

In Lambert v. Genesee Hospital, 10 F.3d 46, 54 (2d Cir. 1993), at the time of the change in nomenclature of post trial motions, the Court stated the rule that a motion for judgment as a matter of law must specify the grounds upon which the motion relies, and a party cannot assert new grounds for relief after the verdict is rendered. In Lambert the Court stated that "at times courts have been lax in enforcing this specificity requirement . . . although more recently courts

have more rigorously exacted compliance with the specificity requirement . . . " Id. at 54 (citing

Smith v. Lightning Bolt Prods, Inc., 861 F.2d 363, 367 (2d Cir. 1988); McCarty v. Pheasant Run

Inc., 826 F.2d 1554, 1555-56 (7th Cir. 1987)).  The rule was well-stated in Lambert, as follows:

> Motivating the Advisory Committee's concern for specificity was the desire to put a party on notice of potential deficiencies in its proof before the case is submitted to the jury.  As Professor Moore explains, "[a] careful reading of the Advisory Committee Note indicates that the Committee was particularly interested in protecting the nonmovant's right to be informed, prior to submission of the case to the jury, of the alleged deficiencies in the case."  5A Moore & Lucas, Moore's Federal Practice ¶ 50.08, at 50-95 (2d ed. 1993).

> Because the defendants failed even to raise the issue of the promotion of Dupre to manager at the directed verdict stage, let alone the grounds upon which they deserved judgment as a matter of law, they are not permitted to raise the issue in a subsequent j.n.o.v. motion.  Defense counsel's prefatory remark at the directed verdict stage that "as a matter of law the plaintiff's have failed to prove any of the claims they are entitled to prove in this phase of the trial" is insufficient to satisfy the specificity requirement of Fed.R.Civ.P. 50(a).  If such a broad, general statement that "a party has failed to prove any and all of its claims" were held to satisfy Fed.R.Civ.P. 50(a), the specificity requirement of that rule would be rendered a nullity.

Id.

> Also in Cruz v. Local Union No. 3 of International Brotherhood of Electrical Workers, 34

F.3d 1148, 1154 (2d Cir. 1994), a case in which this Court has some familiarity, the "waiver"

rule was discussed:

> In Samuels, this Court ruled that judgment as a matter of law is limited to those issues "specifically raised in [a] prior motion for a directed verdict."  992 F.2d at 14.  In its motion to dismiss or for a directed verdict made at the close of the plaintiff's case, Local Union No. 3 challenged only the adequacy of the grievances and the issue of exhaustion of remedies by the prevailing employees – it did not challenge the issue of damages.  "The rule is well established that a motion for directed verdict at the close of all the evidence is a prerequisite for [judgment as a matter of law]."  Hilord Chemical Corp. v. Ricoh Electronics, Inc., 875 F.2d 32, 37 (2d Cir. 1989).  Moreover, this procedural requirement may not be waived as a mere technicality.  See Redd v. City of Phenix City, Ala., 934 F.2d 1211, 1214 (11th Cir. 1991).

Id. at 1154.

Further as stated in Tolbert v. Queens College, 242 F.3d 58, 77 (2d Cir. 2001), "A motion that identifies one element of a claim is insufficient to permit the district court to grant J.M.O.L. for lack of proof of some other, unspecified element . . .." See also Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 164 (2d Cir. 1998) ("It is well established that a party is not entitled to challenge on appeal the sufficiency of the evidence to support the jury's verdict on a given issue unless it has timely moved in the district court for judgment as a matter of law on that issue.").

In the Reply Memorandum the plaintiffs respond to this "waiver" issue, as follows:

1. Once Olive Garden terminated the program on February 21, 2008 it was impossible to cure, so that any cure after that date was futile.

2. The plaintiffs did raise the issue of damages in the pre-charge conference, as follows:

> The instruction that we're talking about here is with respect to cure. They're saying they had the right to cure. That's about damages. And what damages are, are what damages reasonably flowed as a result of the breach. And the question there is the damages that reasonably flow from that breach the cancellation of that program and once that program is cancelled, therefore, and the damages are incurred, how can there be a cure? (Tr. At 2282).

The Court finds that the one viable issue in the plaintiff's present motion for a judgment as a matter of law with regard to the breach of warranty issue is that the Court did not advise the jury that, in order to be a valid cure, Marchesi had to tender a remedy for Palm Bay's damages. The Court finds that, even if this statement as to damages is the law regarding a cure – and the subject will be covered later in the opinion – that the plaintiff Palm Bay waived this claim. A review of the record reveals that Palm Bay did not advance this contention at the time of post-trial motions and the pre-charge and pre-verdict conferences prior to the Court's charge. No

request was ever made that the Court charge the jury that – in order to be an effective cure there must have been a tender by Marchesi of the plaintiff's damages, including the $1.1 million paid to Olive Garden. The plaintiffs never expressly advanced the theory that the alleged cure must place Palm Bay in the same position it would have been if there had been no breach of warranty. These contentions were raised for the first time in this post-verdict motion. This "damages" contention is different and distinct from the question of whether the cure was futile after February 21, 2008, when Olive Garden terminated the Moscato Program.

Apparently, the only reference to damages in relation to the cure defense was made by plaintiff's counsel when he discussed "damages that reasonably flow from that breach." (Tr. At 2282). The Court finds that this statement standing along is insufficient to constitute a request to charge the jury that the jury must find that all the damages have been remedied and the defendant must have placed the plaintiff in the same position as if no breach had occurred (see the plaintiffs' recitation as to its version of the correct charge as set forth in pages i and ii in its motion for judgment as a matter of law).

As stated above, "more recently courts have more rigorously exacted compliance with the specifity requirement." Lambert v. Genesee Hospital, 10 F.3d at 54. See also Smith v. Lightening Bolt Production, Inc., 861 F.2d 363, 367 (2d Cir. 1988) ("In all, we see no indication that the defendants' motions were sufficiently specific to alert Smith to these present contentions . . ."); McCarthy v. Pleasant Run Inc., 826 F.2d 1554, 1555-56 (7th Cir. 1987) ("Thus, neither motion for directed verdict presented the question whether the issue of the defendant's negligence should be withdrawn from the jury and resolved in the plaintiff's favor. She could not present that issue for the first time in her motion for judgment n.o.v.").

To the contrary, not only did the plaintiffs not request a charge and/or a question in the Verdict Sheet that their damages were a requisite part of the cure, but their counsel said the Court had "done a good job" on the cure question in the Verdict Sheet. The discussion with counsel concerning the "cure" question in the verdict sheet was, in part, as follows:

> THE COURT: Here is what I think that I'm going to change it to. Question 2: Did the defendant Marchesi prove that, A, it notified Palm Bay of its intention to cure, and B, that it could have provided a conforming delivery of valid conforming Moscato D'Asti wine sufficient to comply with Olive Garden requirements within the time – I'm taking original out – within the time specified in the – instead of agreement, I'm putting arrangements between Palm Bay and Marchesi. I'm going to repeat it.
>
> That it could have provided a conforming delivery of valid conforming Moscato D'Asti wine sufficient to comply with Olive Garden requirements within the time specified in the arrangements between Palm Bay and Marchesi. That's what I'm going to put. But I'm leaving Olive Garden in. There's no question, everybody knew it was for Olive Garden.

MS. PONTIKES: Your Honor, I renew my objection.

THE COURT: You have an exception. And so do you if you want one.

MR. ETTELMAN: Your Honor, I think you've done a good job. The only thing is if we're going to use arrangement, I think the reference there should be to arrangement between Palm Bay and Olive Garden.

THE COURT: No. Palm Bay and Marchesi. Any other exceptions to the verdict sheet? Ms. Pontikes?

MS. PONTIKES: I don't think so, your Honor.

THE COURT: Mr. Ettelman.

MR. ETTELMAN: No your Honor.

(Tr. at 2381, 2382).

In this regard, the Court notes that an objection to a Verdict Sheet should be made prior to the jury retiring. As stated by then Circuit Judge Sonia Sotomayor in <u>Javis v. Ford Motor Co.</u>, 283 F.3d 33 (2d Cir. 2002):

> We have previously emphasized that "[f]ailure to object to a jury instruction or the form of an interrogatory prior to the jury retiring results in a waiver of that objection . . ..  Surely litigants do not get another opportunity to assign as error an allegedly incorrect charge simply because the jury's verdict comports with the trial court's instructions." <u>Lavoie</u>, 975 F.2d at 55; <u>see</u> <u>also</u> <u>Barrett</u>, 194 F.3d at 349 (applying Rule 51 to an objection to an instruction provided on the jury form); <u>cf.</u> <u>Play Time, Inc. v. LDDS Metromedia Communications, Inc.</u>, 123 F.3d 23, 29 n. 6 (1st Cir. 1997) ("The Rule 51 standard applies to the jury charge and any special verdict form.").

<u>Id</u>. at 57.

<u>See</u> <u>also</u> <u>Fogarty v. Near North Insurance Brokerage, Inc.</u>, 162 F.3d 74, 81 (2d Cir. 1998) ("We conclude that Near North waived its challenge to the Instruction, and we affirm the judgment of district court"); <u>Chooseco, LLC v. Lean Forward Media</u>, LLC, 364 Fed. Appx. 670, 672 (2d Cir. 2010) ("The parties were given an opportunity to object to the jury instructions and verdict form, <u>see</u> Fed.R.Civ.P. 51(b)(2), but LFM did not raise any objection until after the jury's deliberations.  The 'failure to object to a jury instructions or the form of an interrogatory prior to the jury returning results in a waiver of that objection." ) quoting <u>Jarvis v. Ford Motion Co.</u>, 283 F.3d 33, 57 (2d Cir. 2002)); <u>Countryman v. Farber</u>, 340 Fed. Appx. 703, 704 (2d Cir. 2009) ("Federal Rule of Civil Procedure 51 requires that an objection to a question on a verdict sheet or to jury instructions be made 'on the record' stating distinctly the matter objected to and the grounds for the objection, before the case is submitted to the jury . . .").

Here, the issue of the "legally effective" cure with regard to a tender of Palm Bay's damages was not sufficiently raised in the Rule 50(b) motion or in the pre-charge conference or in the verdict sheet discussion.  The Court finds that the failure to raise the issue or object to the charge or the verdict sheet resulted in a waiver of this objection and is not a basis for Rule 50(b) relief.

## 2. **The Cure Defense – On the Merits**

The Court has reviewed the cases cited by the plaintiff Palm Bay for the proposition that the cure in this case required Marchesi to tender the damages that Palm Bay suffered, including the $1.1 million paid to Olive Garden. Even in the absence of a waiver by Palm Bay – which the Court has already found – there was no reversible error in the Court's charge or the verdict sheet.

A review of the cases advanced by Palm Bay in the order raised reveals the following: Afolabi v. Jones, No. 06-CV-27561 2008 WL *4890166 (E.D.N.Y. Nov. 12, 2008) concerned straight away damages in a default judgment case and had nothing to do with the § 2-508 cure; Sinco Inc. v. Metro North Commuter Railroad Company, No 99-CV-10631 2001 WL *1609388 (S.D.N.Y. Dec. 17, 2001) also concerned an inquest as to contract damages and did not involve a cure situation; nor did Canvisa Corp. v. A & Lobasco, 986 F. Supp. 723, 732 (E.D. N.Y. 1997); or G.A. Thompson & Co. v. Wendell J. Miller Mortgage Company, Inc., 457 F. Supp. 996, 999 (S.D. N.Y. 1978).

In Moulden & Sons, Inc. v. Osaka Landscaping Nursery, Inc., 584 P.2d 968 (Wash. App. Ct. 1978), the incidental damages complained of necessarily arose with the discovery of the non-conforming goods. In this case, there were no such incidental damages and, with reasonable certainty, the jury could have found that there would be no such incidental damages, and any subsequent lost profit or printing costs could have been avoided. Here, the Court charged the jury that "In order to show that it effectuated a proper cure, Marchesi must demonstrate that . . . (2) it could have provided a conforming delivery within the original time specified in the appropriate documents." In Nationwide Mutual Insurance Co. v. United Computer Capital Corp., No. 16340, 1994 WL 78640 at 43 (Ohio Ct. App. March 16, 1994), the Court held that the

"cure must correspond to the default and remedy it." In this case, a reasonable jury apparently held that the default could have been remedied by the many efforts of Marchesi to replace the defective wine.

In both <u>Travelers Indemnity Co. v. Mako Machine Tool Corp.</u>, 952 F.2d 26, 29 (2d Cir. 1951) and <u>Clark Oil Trading Company v. Cimerada Hess Trading Company</u>, No. 90-CV-1856 1993 WL 300039 (S.D.N.Y. Aug. 4, 1993), it was held that a proposed cure "is not deficient if it does not mention costs associated with a proposed cure because, as a matter of law, the seller is presumed to bear those expenses." 1993 WL 300039, at *5 Here, apparently, the issue of costs did not arise because Palm Bay rejected Marchesi's efforts to cure. Instead, the record reveals that Palm Bay relied not on its damages, but on its assertion of futility in that the cure was too late because Olive Garden terminated the Moscato program. However, Olive Garden did not terminate the program until February 21, 2008. The proof is clear that Marchesi attempted to cure prior to that date. By its verdict, the jury found that Marchesi did make valid proper cure efforts prior to February 21, 2008 and so the issue of corrective damages may have not been considered, or if considered was rejected.

Finally, as to the issue of futility, the plaintiffs continue to assert that any cure would have been futile because Olive Garden had already cancelled the Moscato program by the time the efforts to cure were tendered. The record reveals, and the jury so found, that all the relevant efforts to cure on the part of Marchesi took place prior to the date Olive Garden cancelled the Moscato program on February 21, 2008. In its charge, the Court expressly brought this factor into the jury's consideration, as follows:

> In order to show that it effectuated a proper cure, Marchesi must demonstrate that: (1) it notified Palm Bay of its intention to cure; and (2) it could have provided a conforming delivery within the original time specified in the

appropriate documents.

Here, Palm Bay contends that the intended purpose of the shipment of Moscato d'Asti was for the Olive Garden, which cancelled its order with Palm Bay on February 21, 2008, and that Marchesi did not effectively communicate its intention to cure the defective shipment of Moscato d'Asti. Marchesi counters that Palm Bay knew that it fully intended to send saleable Moscato d'Asti wine that would meet Palm Bay's needs. In particular, Marchesi contends that its intention to cure was manifested when they agreed to license their trademark and labels to Sella & Mosca so that it could produce additional Moscato d'Asti to compensate for the defective shipment.

\* \* \* \* \*

If the plaintiff does prove this violation, then the second question you must answer as to this cause of action, is, did the defendant Marchesi prove that: (1) it notified Palm Bay of its intention to cure and (2) it could have provided a conforming delivery of Moscato d'Asti wine within the specified time.

(Charge at pp. 47, 48, 49 and 50).

Thus, the jury was advised of this futility contention and, apparently, determined that the offers and efforts to cure were made prior to the February 21, 2008 cancellation of the Moscato wine order by Olive Garden, and within the specified time of delivery. Not only did Marchesi supply an entire valid Lot 310 consisting of 2846 cases of Moscato, as a replacement for Lot 291, it contacted a new third party major supplier, Sella & Mosca to immediately manufacture additional replacement wine. Also, the record reveals that Marchesi offered to send its employees to Palm Bay's warehouse in the United States, to remove the defective bottles from Lot 291, believed to be approximately 6,000 in number and thereby permit the remaining 34,000 bottles to be used by Palm Bay. The Court charged the jury – without objection – that, "Marchesi claims that if given the opportunity, it could have tendered the full amount providing nondefective bottles of Moscato d'Asti from Lot 291 or arranging for additional supply from Terrenostre or Sella & Mosca." The jury verdict indicates that it made that finding.

In sum, as to the cure defense, even in the absence of the "waiver" issue, there were factual issues as to whether Marchesi could effectuate a proper cure under the provisions of § 2-508.  The jury resolved these factual issues in favor of the defendant Marchesi.  The Court finds no valid legal or factual reason to disturb that verdict.  Accordingly, the motion of the plaintiff Palm Bay for a judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) with regard to the jury verdict in the breach of implied warranty of merchantability cause of action, is denied.

Also, with regard to the plaintiff's motion for a new trial pursuant to Fed.R.Civ.P. 59, the Court has weighed the evidence favorable to Marchesi, and finds that the jury has not reached a seriously erroneous result or that the verdict with regard to the breach of warranty of merchantability, is a miscarriage of justice.  Accordingly, the plaintiff's Rule 59 motion with regard to this cause of action is denied.

**D.  <u>As to the "Dispute Resolution Provision" - The Third Counterclaim</u>**

The jury determined that Palm Bay breached section seven of the Importation Agreement by failing to come to a "mutually satisfactory resolution" when it took the set-off .  The damages awarded was the same amount as the set-off.  The relevant section of the Importation Agreement provides as follows:

> A solution fully satisfactory to each party will be sought for each complaint with verification of the condition of the disputed merchandise at the importers warehouse in the presence of the Cantine's technicians.  The findings of that verification will serve as the basis for a mutually satisfactory resolution of the complaint.

Palm Bay asks for judgment as a matter of law in its favor as to this counterclaim based on three contentions.  First, the "mutually satisfactory resolution" was not an exclusive remedy so that Palm Bay cannot be deemed to have committed a breach by taking the set-off without

resort to this provision.  Second, the provision is an unenforceable agreement to agree which is too indefinite to bind Palm Bay and cannot constitute a breach of the Importation Agreement. Third, Palm Bay did negotiate with Marchesi in good faith over eleven months attempting to reach a "mutually satisfactory resolution," and if any party failed to act in good faith it was Marchesi.

In response to these contentions, Marchesi states that, at the very least, the provision was a condition precedent to Palm Bay asserting other remedies, and would be meaningless if it can be circumvented.  Therefore, according to the defendant, under the terms of the provision Palm Bay was obligated to at least attempt to reach a solution.  In addition, the defendant denies that the provision is too indefinite to be enforceable.  Marchesi contends that the material terms of the provision were fully set forth and the requirement that the parties negotiate in the Palm Bay warehouse in the presence of the technicians is enforceable.  In addition, Marchesi raises the issue of lack of good faith in attempting to negotiate under the terms of this provision.

The Court's charge in this regard was short and to the point.

Paragraph seven of the Importation Agreement provides, in pertinent part, that in the event there are complaints concerning the wine:

"[A] solution fully satisfactory to each party will be sought for each complaint with verification of the condition of the disputed merchandise at the importer's warehouse in the presence of [Marchesi's] technicians.  The findings of that verification will serve as the basis for a mutually satisfactory resolution of the complaint."

Defendant Marchesi alleges that although its technicians verified that the Moscato d'Asti from Lot 310 was saleable, Palm Bay did not accept that verification and refused to reach a mutually satisfactory solution concerning the defective Moscato d'Asti.  On the other hand, the plaintiff Palm Bay contends that it did not breach paragraph seven because it accepted and paid for Lot 310 and, it spent months negotiating with Marchesi regarding the appropriate measure of

damages for the defective Moscato d'Asti and that it took the set-off only after it was clear that no agreement could be reached.

It is for you to decide whether Palm Bay breached paragraph seven of the Importation Agreement by failing to come to a "mutually satisfactory resolution" regarding the defective Moscato d'Asti.

As to damages on this third counterclaim, again it is the wine that was delivered and unpaid; the same damages as the first and second counterclaim.

As stated above, the plaintiff contends that the jury verdict based upon the provision at issue in the third counterclaim "must be disregarded and judgment entered as a matter of law in favor of Palm Bay . . . for three separate reasons." (Pltf's motion at 21). The first reason is that the provision is not an exclusive remedy. The Court has reviewed the cases advanced by the plaintiff in support of this contention and is not impressed. This dispute resolution provision does not have to be an "exclusive remedy" in order to be viable. It is an agreement by both parties that, in the event of a problem or a complaint with regard to the manufacture and sale of the wine, "a solution fully satisfactory to each party will be sought for each complaint". (emphasis supplied). Further, the provision goes on to state that there should be "verification of the condition of the disputed merchandise at the importer's warehouse in the presence of the Cantine's technicians." The evidence at the trial revealed that Marchesi offered to go to the Palm Bay warehouse to sort out the valid wine bottles. This offer was never accepted by Palm Bay.

Palm Bay's second contention is that the provision was an "unenforceable agreement to agree." In Aventis Environmental Science USA LP v. Scott Company, 383 F. Supp 2d 488, 511 (S.D.N.Y. 2005), the provision at issue obligated the parties "to engage in negotiations" and "to use best efforts . . . to have met and begun good faith negotiations intended to reach agreement

on those matters set out as Exhibit 20(ii) . . .", the Court in <u>Aventis</u> held that this was "a mere

agreement to agree and is an unenforceable". <u>Id</u>. The Court reasoned as follows:

> Thus, similar to the situation in *Arcadian Phosphates, Inc. v.
> Arcadian Corp.,* 884 F.2d 69, 72 (2d Cir. 1989), this is not a
> situation in which the parties must merely work out a few details
> or formalize an agreement on essential terms after manifesting an
> intent to be bound.  Similar to *Arcadian Phosphates,* a reasonable
> juror could not interpret Scotts' statement in the letter of intent as
> anything more than a statement that Scotts was contemplating the
> possibility of discussing entering into binding supply agreements
> at some undefined future date.  *Id.*  This is an example of a mere
> agreement to agree and is unenforceable.  Compare *Itek Corp. v.
> Chicago Aerial Indus., Inc.,* 248 A.2d 625, (Del. 968) (holding that
> where the parties met and orally agreed to the essential terms, a
> trier of fact could reach the conclusion that defendant had failed to
> exercise reasonable effort to agree on final terms of the contract).

<u>Id</u>.  In contrast to the facts in <u>Aventis</u>, here the parties agreed to a method to resolve the issue of

the disputed merchandise and, therefore, it  is no "mere agreement to agree".   In sum, the parties

to this Importation Agreement agreed that, in the event of a complaint about the wine, they <u>will</u>

seek a solution by verifying the condition of the disputed merchandise at the Palm Bay

warehouse in the presence of technicians.  The proof revealed that Marchesi offered to come to

the United States and review the disputed merchandise at the Palm Bay warehouse.  This offer

was apparently not accepted by Palm Bay in violation of the relevant dispute resolution

provision, or so a jury could find.

Marchesi responds to the plaintiff's contention that there was an agreement to agree by

asserting that "it is at the very least a condition precedent to Palm Bay asserting other remedies."

(Def. Response at 22).  The Court agrees.  In <u>Manley vs. AmBase Corp.</u>, 337 F.3d 237, 250 (2d

Cir. 2003), it was stated that New York law clearly "disfavors interpretations that render contract

provisions meaningless or superfluous."  Here, there is a definite commitment on the part of both

parties to verify the condition of the disputed merchandise at the Palm Bay warehouse in the presence of technicians. Marchesi offered to comply but Palm Bay apparently declined. <u>See also</u>, <u>Jim Ball Chrysler, LLC v. Marong Chrysler-Plymouth, Inc.</u>, 17 A.D. 3d 1113, 1113-14, 794 NYS 2d 545, 546 (4th Dept. 2005); 22 NY Jur. Contracts § 333 ("Before liability can arise on a promise qualified by conditions expressed or implied in fact, those conditions must be fulfilled.")

Further, when the implementation of certain contract terms are left to be resolved in the future, it does not necessarily prevent the enforcement of the agreement. In <u>Tractebel Energy Marketing Inc. v. AEP Power Marketing, Inc.,</u> 487 F.3d 89, (2d Cir. 2007) the rule was well-stated:

> [A] mere agreement to agree, in which a material term is left for future negotiations, is unenforceable." *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981) (citation omitted). However, "not all terms of a contract need be fixed with absolute certainty." *Express Indus.,* 93 N.Y. 2d at 589, 693 N.Y.S.2d 857, 715 N.E.2d 1050. "[A] contract is not necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement." *May Metro Corp. v. May Oil Burner Corp.,* 290 N.Y. 260, 264, 49 N.E.2d 13 (1943). "[A]t some point virtually every agreement can be said to have a degree of indefiniteness," but "parties . . . should be held to their promises." *Cobble Hill Nursing Home v. Henry & Warren Corp.,* 74 N.Y.2d 475, 483, 548 N.Y.S.2d 920, 548 N.E.2d 203 (1989).
>
> * * * * * * *
>
> The fact that the contract anticipates that the parties will have to negotiate these details in the future does not render the contract unenforceable. *See May Metro. Corp.,* 290 N.Y. at 264, 49 N.E.2d 13. Where, as here, the parties have agreed on all material terms of the contract and clearly manifested their intent to b bound by those terms, but have left the practical implementation of certain terms to be resolved in good faith negotiations at a future date, the contract will be enforced.

Id. at 95, 97, 98.

Here, the parties have agreed on the material terms of the dispute resolution provision, namely, verification of the merchandise at the Palm Bay warehouse in the presence of technicians.  Further, the parties agreed that the finding of that verification will serve as the basis for a resolution of the complaint.  The fact that the parties will have to resolve the complaint based on the warehouse verification does not render this contract provision unenforceable.

Accordingly, as to the third counterclaim based on the dispute resolution provision, the plaintiff's motions for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(b) or for a new trial pursuant to Fed.R.Civ.P. 59, is denied.

## E.  As to the Breach of Fiduciary Duty by the Taubs - The Sixth Counterclaim

In the Court's decision on the parties cross-motions for summary judgment, the Court ruled that the issue of the sixth counterclaim and the effect of the Taub's obligation under the Agency Agreement with regard to the set-off was for the jury in the following language:

> With respect to Count IV, the Taubs argue that they were not acting as agents for Marchesi but in their capacity as the owners of Palm Bay when they instructed it to take a set-off.  However, as Marchesi points out, this is the problem.  The Agency Agreement was still in effect when the Taubs instructed Palm Bay to take the set-off.  By instructing their company to take an action that would harm their principal, the Taubs may have breached their duty of loyalty.  A jury will have to decide this question.

In the charge, the Court briefly set forth the instructions as to the sixth counterclaim based on breach of fiduciary duty as follows:

> The sixth and final counterclaim by the defendant Marchesi, is against the Taubs for breach of their fiduciary duty under the Agency Agreement when they instructed Palm Bay to take a set-off of the price of the imported wine.

> In this regard, the Taubs contend that they were not acting as
> agents for Marchesi but in their capacity as the owners of Palm
> Bay when they instructed it to take a set-off. However, the
> defendant Marchesi contends that the Agency Agreement was in
> full force and effect when the Taubs instructed Palm Bay to take
> the set-off. Marchesi further contends that, when the Taubs
> instructed their company, Palm Bay to take the set-off, that was an
> action that would harm their principal, Marches (sic), and
> therefore, the Taubs breached their duty of loyalty in that regard.
> You will have to determine this question.

In essence, the plaintiff asserts that the act of deciding to set-off the purchase price of the good wine by the Taubs was not "within the scope of the (agency) relation." (Pltf's motion at 23). Palm Bay emphasizes that "the Taubs at best only had a limited fiduciary duty, namely the appointment of importers, distributors and wholesalers, and they were not acting within the scope of these relations when they instructed Palm Bay to take the set-off." Id. Further, Palm Bay contends that it and Marchesi had been negotiating with regard to the issue of the defective Moscato at arms length. In their role as agents the Taubs were not involved. Therefore, the Taubs conclude that they were not acting as fiduciaries and could not have breached any fiduciary duty when they instructed Palm Bay to take the set-off.

Not so, says Marchesi. It is basic agency law that agents owe their principal a fiduciary duty of loyalty and good faith in all of their efforts to represent Marchesi. Stated otherwise, the defendant asserts that, "Far from being limited to selecting their own company as Marchesi's importer, the Taubs owed Marchesi a duty of loyalty and good faith in all of their efforts to represent Marchesi and its brand in the United States. (Dft's Response at 24).

Initially, the Court notes that in its answer to a prior question in the Verdict Sheet, as to the fourth counterclaim, the jury found that the Agency Agreement and the Importation Agreement were not part of a single transaction and should not be construed as a single contract

(Jury Verdict Sheet at question 8).  That determination by the jury does not resolve the question as to the alleged breach of fiduciary duty with regard to the sixth counterclaim.  However, it is a factual determination that has some bearing on the determination of the issues in this motion.

When Palm Bay acting by the Taubs, its owners, took the improper set-off, the Agency Agreement was in full force and effect.  However, the scope of the Agency Agreement was clearly set forth in the first paragraph:

> Agency: The Manufacturer hereby appoints the Agents as its exclusive sales agents and representatives in the United States of America and all its territories and possessions, to sell the Manufacturer's products with brand name MARCHESI Di Barolo and/or others to be agreed, select and appoint primary importers, distributors and wholesalers, and otherwise to act as the representative of the Manufacturer in the Unites States of America, Canada, Mexico and other areas to be decided, and the agents with all authority to select and appoint primary importers, distributors and wholesalers and act as sales agents and otherwise represent the interests of the Manufacturer in accordance with the terms of the Agreement.

It is well-established that agents owe their principals a duty to exercise the utmost good faith and loyalty.  Sokoloff v. Harriman Estates Dev. Corp., 96 N.Y.2d 409, 416, 729  N.Y.S.2d 425, 430 754 N.E.2d 184 (2001).  However, an agent owes a fiduciary duty "only with respect to matters within the scope of his agency."  Mickle v. Christies, Inc., 207 F. Supp 2d 237, 245 (S.D.N.Y. 2002); see also Steinbeck v. McIntosh & Otis, Inc., No. 04-CV-5497 2009 WL 128189 at *8 (S.D.N.Y. Mar. 31, 2009) ("M&O's fiduciary duty owed to plaintiff was circumscribed by the terms of the agreement."); Restatement (Third) of Agency § 8.01: ("Fiduciary obligation, although a general concept, is not monolithic in its operation.  In particular, an agent's fiduciary duties to the principal vary depending on the parties' agreement and the scope of the parties' relationship [and] examining whether particular interactions are as

principal and agent . . ."); Meisel v. Grunberg, 651 F.Supp. 2d 98, 116 (S.D.N.Y. 2009) ("Similarly, under the facts alleged no fiduciary relationship exists with Michael with respect to paragraph 67(h) since the conduct alleged falls outside of Michael's role as Fanny's agent; plaintiff and Michael are more properly characterized as 'two parties acting and contracting at arm's length' in connection with the Buy-Out . . .").

Notwithstanding the well-established rule that an agent must exercise the utmost good faith and undivided loyalty to their principal throughout the relationship, Western Elec. Co. v. Brenner, 41 NY2d 291, 295, 392 N.Y.S.2d 409, 360 N.E.2d 1091 (1977), where parties have entered into an agency agreement, the Courts look to the agreement to discern the rights and obligations of the agent. See EBCI, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11, 799 N.Y.S.2d 170, 832 N.E.2d 26 (2005). Here, the obligations of the Taubs as agents of Marchesi was to select and appoint importers, distributors and wholesalers. The jury determined that the two agreements were separate transactions with different purposes. The Taubs were under no fiduciary duty when, acting as officers of Palm Bay, they instructed Palm Bay to take the set-off. As stated in Northeast General Corp v. Wellington Advertising, Inc., 82 N.Y2d 158, 172-73, 604 N.Y.S.2d , 1, 9, 624 N.E.2d 129, 137-38 (1993), the fiduciary relationship is with regard to matters "within the scope of the relation". Also, as stated in Northeast General Corp., "(u)ltimately, the dispositive issue of fiduciary-like duty or no such duty is determined not by the nomenclature 'finder', or 'broker' or even 'agent', but instead by the services agreed to under the contract between the parties." Id., 82 N.Y.2d at 163, 604 N.Y.S.2d at 4. The Agency Agreement says nothing about the Taubs acting as agents with respect to payments between the importer and Marchesi. As stated in Meisel v. Greenberg, supra at 116, the set-off is outside the scope of the

role of the Taubs as agent for Marchesi. As to the set-off the Taubs were acting independently, and not within the terms of the Agency Agreement.

Therefore, the Court finds as a matter of law, that, with regard to the set-off, the Taubs were not acting as fiduciaries when they instructed Palm Bay to take the set-off. Accordingly, there is only one conclusion as to the sixth counterclaim; namely, judgment as a matter of law in favor of the plaintiffs dismissing the counterclaim. It is now so ordered.

## IV. <u>CONCLUSION</u>

The motion by the plaintiffs Palm Bay International and David and Marc Taub for judgment as a matter of law, pursuant to Fed. R. Civ. 50(b), or for a new trial pursuant to Fed. R. Civ. 59 (1) as to the plaintiff Palm Bay cause of action for breach of the implied warranty of merchantability; and (2) as to the third counterclaim based on the Dispute Resolution Provision in the Importation Agreement, are both denied.

The motion by the plaintiffs for judgment as a matter of law pursuant to Fed. R. Civ. 50(b) as to the sixth counterclaim against David Taub and Marc Taub for breach of their fiduciary duty in instructing Palm Bay to take the set-off, is granted. The sixth counterclaim is dismissed as a matter of law.

The Clerk of the Court is directed to enter judgment in accordance with this decision and to close this case.

      SO ORDERED.
Dated:  Central Islip, New York
       July 11, 2011

_/s/ Arthur D. Spatt_

ARTHUR D. SPATT
United States District Judge
